This is an appeal from an order denying a petition to intervene in the modification of a divorce decree.
Between 1979 and July 22, 1982, Karen Jonita Burton Finkenbinder and Larry Eugene Burton were married and lived together as husband and wife. During a six-month portion of that time, from summer 1979 until November or December 1979, Karen entered into an extra-marital relationship with Michael Finkenbinder, with whom she commuted to and from college. Finkenbinder and his then wife, Janice, were social acquaintances of the Burtons. Michael and Karen's relationship culminated in sexual intercourse on at least three occasions, the last such occasion being in November 1979, when they were together on ROTC field exercises.[1] Shortly thereafter, Karen discovered that she was pregnant. Michael, recognizing the possibility that the child might be his, asked Karen if he was the father. Karen, who admits that she and Larry Burton were also having sexual intercourse, although infrequently, during the time the child was conceived, assured Michael that he was not the father.
Subsequently, Karen and Michael's relationship dissolved. She gave birth to a son, Joseph Andrew Burton, on July 29, 1980. Thereafter, Michael and Janice moved from Leavenworth, Kansas, where both couples were residing during Karen and Michael's *Page 882 
relationship, to Missouri. The Burtons and Finkenbinders thereafter ceased contact with one another. Neither Janice nor Larry had any knowledge of their respective spouse's infidelity until institution of the current suit.
Michael and Janice Finkenbinder were divorced in Oklahoma in November 1981. Karen and Larry Burton's marriage ended in divorce on July 22, 1982. The decree divorcing Karen and Larry, was rendered by the Circuit Court of Calhoun County. It recited that one child, Joseph Andrew Burton, had been born of their marriage and it incorporated the parties' agreement concerning the child.[2] Article V of their agreement provides in pertinent part as follows:
 "1. The parties have given serious consideration to the future welfare of their child and agree, subject to the further order of any court of competent jurisdiction, that the full care, custody and control of the parties' minor child, Joseph Andrew Burton, born July 29, 1980, shall be joint with the custody during the school year from September 1 to May 31 being in the Husband, and the custody during the summer months, June 1 through August 31, in the Wife. . . ."
In January 1983, Karen, having learned of Michael's divorce, telephoned him, reestablishing contact for the first time in approximately two and one-half years. Subsequent to that call, Michael traveled from Fort Benning, Georgia, where he was stationed at that time, to visit Karen at Fort McClellan. During that visit, he saw photographs of young Joseph. Michael, recognizing a similarity between those photographs and photographs of himself at the same approximate age, again asked Karen if he was the child's father. At this point, she informed him that, indeed, he was the father. She now alleges that she knew of Michael's paternity since very shortly after conception and testifies that she has previously told her best girlfriend that Michael is Joseph's father. Karen and Michael resumed their relationship and were married some sixty days later, on March 18, 1983. That same day Karen, through her attorney, informed Larry Burton that he was not Joseph's father.
On March 28, 1983, Karen filed a petition to modify the original divorce decree. Said petition set forth the facts of Karen and Michael's relationship and Karen's long-held belief that Michael, not Larry, was Joseph's biological father. The petition, which indicated that tissue and blood-typing tests conducted at the University of Alabama Medical Center placed the probability of Michael's paternity at 97.1%, requested that full care, custody and control of Joseph be awarded to Michael and Karen and that Joseph's name be changed to Joseph Michael Finkenbinder.
On April 1, 1983, Michael filed a petition to intervene in Karen's petition to modify, seeking to be declared the child's father and have custody granted to Karen and himself. A guardian ad litem was appointed and a hearing was held on Michael's petition to intervene on June 9, 1983. On August 2, 1983, his petition was denied. He appeals here, asserting that the best interest of the child requires that he be allowed to intervene. Larry Burton (appellee) counters by arguing that the denial of a motion to intervene is a non-appealable interlocutory order and that, even if appealable, the denial of such motion is discretionary with the trial court and should not be disturbed on appeal, absent an abuse of discretion. Further, he raises certain affirmative defenses, including unclean hands, laches and equitable estoppel, which he argues may be applied against Karen in her petition to modify and which he argues may be applied with equal force against Michael.
The affirmative defenses, asserted against Karen, are not before us on this appeal. We do not accept Burton's argument that, because of the now-existing *Page 883 
marital relationship between the Finkenbinders, these defenses may be imputed against Michael. No authority is cited for this proposition. We deem it to be waived. Super X Drugs of Alabama,Inc. v. Martz, 51 Ala. App. 370, 286 So.2d 47 (1973). (We note that this court, speaking through an opinion written by Judge Scruggs, retired circuit judge, held that the question of the parentage or the legitimacy of a child born during the marriage and averred in the divorce to be a child of the marriage is res judicata as between the parties after the judgment of divorce.Stewart v. Stewart, 392 So.2d 1194 (Ala.Civ.App. 1980), cert.denied, 392 So.2d 1196 (Ala. 1981).)
Neither do we accept Burton's argument that the denial of a motion to intervene as of right is non-appealable. We have held that such denials are final as to the intervention and, thus, appealable. Thrasher v. Bartlett, 424 So.2d 605 (Ala. 1982);Pruett v. Ralston Purina Co., 273 Ala. 594, 143 So.2d 309
(1962); Beitel v. Board of School Commissioners, 419 So.2d 242
(Ala.Civ.App. 1982).
In Alabama intervention is permitted as of right in certain circumstances and with permission of the court in others.Walker County Department of Pensions Security v. Mason,373 So.2d 863 (Ala.Civ.App. 1979). Rule 24, Alabama Rules of Civil Procedure provides in pertinent part:
 "(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
The purpose of Rule 24 is to anticipate future litigation, to discourage multiplicity of litigation and to relieve the intervenor from possible prejudice of stare decisis in later litigation involving the same questions of law and fact to which the unsuccessful application for intervention is finally a party. Committee Comments, Rule 24, A.R.Civ.P.; Hughes v.Newton, 295 Ala. 117, 324 So.2d 270 (Ala. 1976). For this reason Rule 24 should be liberally construed. Hughes, supra. We consider that the matter of custody of a child to which one seeks to establish paternity is a matter of such interest as to provide intervention of right. Stanley v. Illinois,405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
In all custody matters, the best interest of the child is of paramount consideration. Gazaway v. Gazaway, 423 So.2d 1375
(Ala.Civ.App. 1982). We agree with our sister state, Florida, that in cases of this nature a determination of paternity may be necessary for the trial court to properly decide the child's best interest, Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980). We agree that the party seeking to determine paternity must have standing to do so. Kendrick, supra. He must show a claim of interest in the matter being litigated. State v. ColonialRefrigerated Transportation, Inc., 48 Ala. App. 46,261 So.2d 767 (Ala.Civ.App.), aff'd, 288 Ala. 433, 261 So.2d 772 (1972).
We have recently, again through an opinion written by Judge Scruggs, held that a reputed biological father of a child born during the marriage of the mother to another man, has the right and standing to bring an action for declaratory judgment to establish his paternity of the child. Davis v. Sparks, [Ms. April 25, 1984] (Ala.Civ.App. 1984). If an action to establish paternity of a child born during the marriage of the mother to another may be brought through suit for declaratory judgment, we perceive no basis for denying it being done by way of intervention in an already pending action relating to custody and best interest of the child. The purpose of avoiding multiple suits and speeding the determination of issues is served in both intervention and declaratory judgment actions. *Page 884 
We have studied the judgment of the trial court by which the motion to intervene was denied. (It is to be noted that substantial testimony was heard by the court in support of the motion.) The court relates therein certain findings of fact which strongly support the allegations of the motion as to the issue of paternity. However, immediately thereafter, the court said,
 "10. It is discretionary with the court whether to grant the motion to intervene even though the petitioner might well be the biological father of the child.
 "11. The question of whether or not the motion should be granted needs to be considered along with what would be in the best interest of the child."
The court then denied the intervention.
It appears to this court that these and other findings of the trial court exemplify what we have previously said, that there is allegation and evidence that the movant might well be the biological father of the child in controversy, and such relationship needs to be determined in order to decide the best interest of the child. We find the court to be in error in finding, as a matter of law, that intervention in this case is discretionary with the trial court. To the contrary, motion to intervene under Rule 24 (a) is not a matter of discretion but one of right. Thrasher v. Bartlett, supra.
This court fully recognizes the unhappiness and even injury which could occur in a family in which there has been no divorce nor prior rupture of familial peace by the appearance of a previously unknown claim of biological parenthood. We recognize the possible, even probable, traumatic effect of such a claim and its establishment in court upon a child without knowledge. However, we also consider the possible consequences of refusal to allow the proof of such a relationship.
It is established that a married woman who conceives a child by one not her husband may institute paternity proceedings against the putative father. State v. Palmer, 439 So.2d 174
(Ala.Civ.App. 1983). We say here, as we said in Davis v.Sparks, supra, that there is reasonable cause for debate as to whether denial of a similar right to the putative father may be contrary to the equal protection clause of the fourteenth amendment to the Constitution of the United States.
It is the judgment of the court that the trial court erred in denying intervention. The judgment of denial is reversed and the cause is remanded.
REVERSED AND REMANDED.
BRADLEY, J., concurs.
HOLMES, J., dissents.
[1] The record shows that both Karen and Michael are currently serving as officers in the United States Army.
[2] The record indicates that Larry Burton is a sergeant in the United States Army and that at the time of his divorce both Larry and Karen were stationed at Fort McClellan, where Karen remains stationed.