WRIGHT, Presiding Judge.
In June 1985 the Marshall County Juvenile Court terminated the parental rights of Jeannie Turley to her four children. This case involves only the termination of parental rights of one of the children, Jason Paul Trainor.
In May 1982 Jeannie Turley voluntarily placed Jason (and her other children) in foster care with the Marshall County Department of Pensions and Security (DPS). DPS filed a petition in August 1982 in the juvenile court alleging that Jason was dependent and asking for temporary custody of Jason (and the other children). The court granted the petition. Three judicial reviews were had on the temporary custody order. After each hearing, temporary custody was continued in the Marshall County DPS.
A petition was brought by DPS in the juvenile court seeking permanent custody and termination of parental rights for Jason in October 1984. The petition states in pertinent part:
“Until February, 1984, Ms. Turley alleged that James Allen King was Jason’s natural father; however, on February 3, 1984, Randal Pruitt contacted our agency stating that he was Jason’s natural father, a fact which Ms. Turley now concurs. Mr. Pruitt wishes to be considered a resource for Jason although Jason has not seen him since infancy. Prior to February, 1984, he had offered no support to said child and had not inquired of his well-being. In view of this and the fact that Jason has no emotional or legal relationship to Mr. Pruitt, we do not feel that his home should be considered.
“Our agency feels that it is in the best interest of said child to be placed with his siblings for adoption and we request that parental rights be terminated.”
The clerk of the court issued an order for service of process and return to Randal Pruitt. The sheriff returned the service, “Not at address shown. Need better address.” The clerk then issued an order for service of process to Walter Trainor, who was married to Jeannie Turley when Jason was born.
An entry of appearance, an answer, and a counterpetition were filed by Randal Pruitt in January 1985. He also filed a petition for legitimation of Jason in the Probate Court of Marshall County.
A trial was had on this matter in January 1985. At the hearing the attorney for DPS moved to exclude Pruitt from the action and stated:
*441 “Although he [Randal Pruitt] may have at some point in the past tried to legitimate Jason Paul Trainor, he is not the father of Jason Paul Trainor. Walter Trainor, who, of course, is a party to the action and who was served by publication, is the father of Jason Paul Trainor. And it’s our position that Randal Paul Pruit has no standing to participate in this litigation.”
The court granted the motion and stated:
“This Court very well may have jurisdiction to make a determination of paternity in an action. The Court does take note of the Uniform Parentage Act and the appropriate section which says that the ‘presumption of paternity may be rebutted in an appropriate action.’ The Court does not find, however, that this proceeding to terminate parental rights is the appropriate form in which to make that determination.
“[T]he Court does not feel that a termination of parental rights would be the appropriate form in which to make a determination of paternity under the Uniform Parentage Act, the Court finds that Randal Paul Pruitt does not have standing in this case, via a party to this case, and is excluded for the purposes of this hearing.”
A motion to continue the hearing until Jason’s paternity was established was made by Pruitt’s attorney. The court denied this motion and once again stated that Pruitt did not have standing. The attorney then requested that Pruitt be given an opportunity to present evidence through Mrs. Tur-ley that Pruitt was Jason’s father, which was denied. Pruitt was denied participation in the proceeding and left the courtroom.
Pruitt filed a motion to intervene in the case two days after the hearing. The motion alleged that Pruitt was the same person named in the petition to terminate parental rights which was filed by DPS and that he was Jason’s natural father. The motion further stated that under the laws of the State of Alabama and the Constitution of the United States he had a right to a hearing on his claim that he was Jason’s father and his desire to have custody of the child. An amendment to the petition was filed in May 1985, stating that the Probate Court of Marshall County had entered an order declaring that Jason Paul Trainor was the legitimate child of Randal Paul Pruitt and changing the name of the child to Jason Paul Pruitt.
In June 1985 the court granted the petition of DPS to terminate parental rights. The court found that the child was dependent and neglected and terminated all legal rights of the parents, Jeannie Turley and Walter Trainor. The court granted permanent custody to DPS and granted to DPS the right to place the child for adoption. As to Randal Pruitt, the judgment stated:
“The Court before proceeding to hear testimony in this case, considered the matter of whether Randal Pruitt, alleged father of Jason Paul Trainor, was properly before the Court. On motion of the attorney for the Department of Pensions and Security, the Court found that Randal Pruitt was not a party to this action and that although certain pleadings had been filed in this case on his behalf styled ‘Answer to Petition and Counter-Petition’ there had been no motion to intervene or other pleading which made him a proper party. The Court granted the motion of the attorney for the Department of Pensions and Security and ruled that Randal Pruitt was not a party to this action. The Court finds that subsequent pleadings have been filed in this case on behalf of Randal Pruitt seeking to be allowed to intervene in this action and to oppose termination of parental rights. The Court finds that the petition for intervention filed by Randal Pruitt on February 2, 1985, comes late and is denied.”
Pruitt appeals from that judgment.
There are two issues raised on appeal: (1) whether Pruitt has standing to be involved in a termination of parental rights case, and (2) whether Pruitt was entitled to intervene as a matter of right in the termination of parental rights case.
*442 A child born to a married woman is presumed to be the legitimate offspring of the husband. Fike v. Department of Pensions and Security, 459 So.2d 921 (Ala.Civ.App.1984). This presumption of legitimacy is rebuttable but only by “clear and convincing evidence which tends to show that it is naturally, physically, or scientifically impossible for the husband to be the father.” Leonard v. Leonard, 360 So.2d 710 (Ala.1978). In Anonymous v. Anonymous, 472 So.2d 640 (Ala.Civ.App.1984), this court stated that a putative father of a child born during the marriage of the mother to another man has the right and standing to establish his paternity of the child.
Pruitt had standing in this case. The petition to terminate parental rights stated that Pruitt claimed that he was Jason’s father. Service of process was attempted on Pruitt to notify him of the filing of the action. Pruitt had also filed a petition for legitimation of Jason. The court erred when it found that Pruitt lacked standing to establish paternity of Jason in the termination of parental rights case.
Rule 24, A.R.Civ.P. provides:
“(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.”
This rule allows intervention as of right in certain circumstances and with permission of the court in others. Walker County Department of Pensions and Security v. Mason, 373 So.2d 863 (Ala.Civ.App.1979). The purpose of this rule is to anticipate future litigation, to relieve the intervenor from possible prejudice of stare decisis in later litigation involving the same questions of law and fact to which the unsuccessful application for intervention is finally a party and to discourage multiplicity of lawsuits. Hughes v. Newton, 295 Ala. 117, 324 So.2d 270 (1976). In Finkenbinder v. Burton, 452 So.2d 880 (Ala.Civ.App.1984), a circuit court had denied a putative father’s petition to intervene in the mother’s motion to modify a divorce decree to request that full custody of the child be awarded to her and the putative father. This court reversed and stated: “We consider that the matter of custody of a child is a matter of such interest as to provide intervention of right.” 452 So.2d at 883.
In this case there is a putative father who attempted to intervene in a termination of parental rights case. The court disallowed the intervention and ordered DPS to take custody of the child and to arrange for adoption proceedings. We hold that Pruitt has such an interest in determining paternity of a child in a termination of parental rights case as to provide intervention of right.
DPS contends that Pruitt did not timely file his motion to intervene. Pruitt did not file his motion until two days after the hearing. He did not learn that he would not be allowed to participate in the hearing until the day that the hearing was scheduled. At that time, Pruitt was in court with his attorney ready to proceed. He had filed an answer and a counterpetition. No one had challenged his right to participate in the hearing. Rule 24 provides that motions to intervene must be timely filed. We find that due to the circumstances in this case, the motion to intervene was timely filed.
It is the judgment of the court that the trial court erred in denying intervention. The judgment of denial is reversed and the cause is remanded.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.