This is an appeal from a finding of paternity entered in a divorce action.
Kimberly Ann Foster (mother) and Michael David Foster (husband) were married November 2, 1985. On May 17, 1986, some six and one-half months after the marriage, a child, Jessie Danielle Foster, was born.
In July of 1987, both parties filed for divorce, seeking custody of Jessie. On August 28, 1987, Garry Whitley filed a petition to intervene, claiming to be the natural father of Jessie. The trial court granted the petition and ordered blood tests of all parties on the authority of Finkenbinder v.Burton, 452 So.2d 880 (Ala.Civ.App. 1984), which holds that a putative father has the right to intervene in a divorce action to establish his paternity of a child.
On February 21, 1989, a hearing was conducted on the question of paternity, and on March 16, 1989, the court issued an order finding that Whitley is the biological father of Jessie. However, following another hearing in August 1989, the trial court granted primary custody to the husband. *Page 991 
The husband appeals the finding that Whitley is the father of Jessie. We reverse.
The dispositive issue is whether Whitley has standing under the Alabama Uniform Parentage Act (UPA), §§ 26-17-1 through -21, Ala. Code 1975 (1986 Repl. Vol.), to commence proceedings to have himself declared the natural father of Jessie.
We must first consider that the UPA provides for the right to intervene to establish paternity for all actions commencing after May 7, 1984, and, therefore, as to that issue, supersedesFinkenbinder and is controlling here.
Section 26-17-5(a) of the UPA describes who may be considered a presumed father and states in pertinent part:
 "(a) A man is presumed to be the natural father of a child if:
 "(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;
". . . .
 "(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child;"
Section 26-17-6(a)-(c) addresses who may bring an action to determine the father and child relationship and provides in pertinent part:
 "(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) of section 26-17-5(a)."
We note that a similar question was addressed in Ex partePresse, 554 So.2d 406 (Ala. 1989), wherein the supreme court declared the dispositive issue to be as follows:
 "Does a man claiming to be the father of a child conceived and born during the marriage of its mother to another man have standing under the UPA to initiate an action to establish that he is the father of the child, where the presumed father persists in the presumption that he is the father? Under the facts of this case, we answer this first impression issue in the negative. . . ."
Id. at 411 (emphasis supplied).
The court further addressed the question by stating:
 "This is not permitted under the UPA, as long as there is a presumed father, pursuant to § 26-17-5(a)(1), who has not disclaimed his status as the child's father; consequently, another man, though he later marries the mother and lives with the mother and child, has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his paternal status, not even the subsequent marriage of the child's mother to another man can create standing in the other man to challenge the presumed father's parental relationship."
Id. at 418.
The husband contends that, because of his marriage to the mother, he is a presumed father under § 26-17-5 and that, therefore, under the holding in Presse, Whitley lacks standing to bring a petition for paternity.
However, Whitley contends that, since the husband has "received the child into his home and held her out to be his own," Whitley has standing to rebut this presumption under § 26-17-6(b). We disagree. Since the husband was married to the mother at the time of the birth, we find that § 26-17-5(a)(1) controls and that the husband is a presumed father under that section.
Whitley next contends that, because he "openly held [Jessie] out to be his child and also welcomed her into his house and family circle," he is a presumed natural father under §26-17-5(a)(4) and, therefore, has standing to determine the father and child relationship under § 26-17-6(b). A diligent search of the record produces no evidence to support this statement, nor is *Page 992 
any such evidence referenced in Whitley's brief. Therefore, we must find that Whitley is not a presumed father under §26-17-5(a)(4) and has no standing under § 26-17-6(b).
Accordingly, we pretermit as unnecessary a discussion of Whitley's final contention, distinguishing the facts inPresse from the facts here as giving him standing to challenge the husband.
This case is due to be reversed and remanded with instructions to the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
INGRAM, P.J., and ROBERTSON, J., concur.