THIGPEN, Judge,
dissenting.
I am constrained to concur with Judge Crawley’s dissent because the law is clear that one claiming to be the father of a child born during the mother’s marriage to another man has no standing to institute an action either to declare paternity, or to attempt to rebut the legal presumption that serves to protect the child and the integrity of the family unit. Ala.Code 1975, §§ 26-17-5 and 26-17-6; Ex parte Presse, 554 So.2d 406 (Ala.1989); see also Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). I am compelled, however, to comment on some of my concerns regarding the somewhat unique nature of this case.
Foremost is my concern that the motion to dismiss J.W.O.’s complaint by challenging J.W.O.’s standing was filed by the child’s guardian ad litem. That distinction supports the legislative wisdom involved in enacting certain provisions of the AUPA to exclude inquiries into a child’s paternity when such inquiries would be destructive to the child’s family unit. It also supports my conclusions that there are circumstances surrounding the child, his conception, his birth, and his upbringing that may be known only to those directly involved and most affected, and that the child’s guardian ad litem has determined that the child’s interest is best served by protecting his established family unit.
The mother’s husband has accepted this child as his own, providing this child with a legal father who is willing to support the *1008 child financially and otherwise. J.W.O.’s declaratory action does not appear to be brought for the purpose of supporting the child, but merely to proclaim his biological paternity. If J.W.O. is intending to provide for the child to inherit from J.W.O., that purpose could be accomplished in another legal manner, without disrupting the sanctity of the child’s family unit and without the risk of bastardizing the child, possibly forever, i.e., by J.W.O.’s making a will. To permit J.W.O. to proceed in this action may allow him to take away the child’s legitimacy. There is no legal recourse for a child if it is later determined that the petitioner is not the child’s biological father.
Initially, J.W.O. was not attempting to rebut the legal presumption that protects this child, but was merely attempting to proclaim his paternity and have himself declared to be the child’s father. The law recognizes this child as the legal child of another man, and J.W.O. is barred from asserting paternity without first overcoming that statutory presumption. Ala.Code 1975, § 26-17-5; Presse, 554 So.2d 406; see also Michael H., 491 U.S. 110,109 S.Ct. 2333.
Before the adoption of the AUPA, one was not barred from initiating a declaratory action for that purpose. Anonymous v. Anonymous[3] 472 So.2d 640 (Ala.Civ.App.1984), writ quashed, 472 So.2d 643 (Ala.1985); see also Finkenbinder v. Burton, 452 So.2d 880 (Ala.Civ.App.1984). Since that time, however, our Supreme Court has clearly stated that an action by one situated as J.W.O. “is not permitted under the [AUPA], as long as there is a presumed father, pursuant to § 26-17-5(a)(l), who has not disclaimed his status as the child’s father.” Presse, 554 So.2d at 418; see also Ala.Code 1975, § 26-17-6, and D.D. v. G.L.D., 600 So.2d 265 (Ala. CivApp.1991).
Furthermore, this action could not be brought pursuant to Ala.Code 1975, § 26-17-6(b), because J.W.O., “had not received the child into his home, had not openly held out the minor child as his natural child, nor acknowledged paternity of the minor child in a writing filed in accordance with the provisions of the legitimation statute.” State ex reí E.K.D. v. M.R.W., 662 So.2d 910, 913 (Ala.Civ.App.1994), writ quashed, 662 So.2d 913 (Ala.1995).
This court has previously considered the AUPA presumption in a case involving a child conceived prior to the mother’s marriage. Foster v. Whitley, 564 So.2d 990 (Ala. Civ.App.1990). The law clearly states that the husband is presumed to be the natural father of a child bom to his wife during their marriage and there exists no legal distinction when conception occurred before the marriage. Ala.Code 1975, § 26-17-5, and Foster, 564 So.2d 990.
In his complaint for a declaratory judgment, J.W.O. expressly sought to be declared the child’s father and asked the trial court to determine and declare his rights, duties, and the liabilities involved. In a factually similar case, the United States Supreme Court addressed the constitutionality of a California statute expressing that the presumption is conclusive, and held that one in the position of J.W.O. has no rights or responsibilities in regard to the child, so long as there is a presumed father willing to accept those *1009 rights and responsibilities for him. Michael H., 491 U.S. 110, 109 S.Ct. 2333. Although the AUPA presumption is rebuttable, at this time, J.W.O. simply has no standing to attempt to rebut that presumption. Ala.Code 1975, §§ 26-17-5 and -6.
The law of this state defines the father and child relationship as a “legal relationship.” Ala.Code 1975, § 26-17-2. Although it is clear that a child can have only one father, courts have historically considered that a determination regarding parental rights and the best interests of a child involve more than a biological connection. In reviewing cases where the best interest of a child is at stake, I continually seek for distinctions regarding the rights and responsibilities of a “legal” father and those of a “biological” father. See my dissent in State ex rel. AT. v. E.W., [Ms. 2940404, November 17, 1995] — So.2d-(Ala.Civ.App.1995); see also Fuller v. Fuller, 623 So.2d 332 (Ala.Civ.App. 1993).
The AUPA is historically rooted in honorably protecting the integrity of the family unit, i.e., the child, the mother, and the husband who has accepted the child as his own; however, I am concerned that the passage of time could forever cloak a child’s biological paternity. I know of no method whereby a legal stranger situated as is J.W.O. can seek to legally ascertain the truth regarding a child’s biological paternity. Because this case merely involves standing, I do not believe a ruling against J.W.O. would bar a subsequent petition and a ruling on the merits should circumstances change and paternity become an issue. In that situation, J.W.O. might be permitted to intervene. See D.D., 600 So.2d 265; see also, S.E.B. v. J.H.B., 605 So.2d 1230 (Ala.Civ.App.1992); State ex rel. Goodno v. Cobb, 567 So.2d 376 (Ala.Civ.App. 1990); and Finkenbinder v. Burton, 477 So.2d 459 (Ala.Civ.App.1985).
As Judge Crawley stated in his dissent, this court must adhere to pronouncements of our Supreme Court. I would affirm the judgment of the trial court; therefore, I must respectfully dissent.

. The complex evolution of this Anonymous case is as follows: Davis v. Sparks was originally appealed to the Court of Civil Appeals, which reversed and remanded on April 25, 1984. On May 30, 1984, the April 25, 1984, opinion was withdrawn on rehearing, the application for rehearing was overruled, an opinion was substituted, and the judgment of the trial court was again reversed and remanded. On June 12, 1984, a petition for a writ of certiorari was filed with the Alabama Supreme Court, and this was denied on August 31, 1984. On September 26, 1984, it was placed on rehearing by the Alabama Supreme Court, ex mero motu. On May 24, 1985, the rehearing was quashed as improvidently granted. Sometime between the original release on April 25, 1984, and the denial of certiorari by the Supreme Court, the style was amended to Anonymous v. Anonymous.
Between the time of the Court of Civil Appeals's release of Davis v. Sparks on April 25, 1984, and the change of the style by the Supreme Court, the Davis case was cited in Eddy v. Lyle, 455 So.2d 877 (Ala.Civ.App.1984), and Finken-binder v. Burton, 452 So.2d 880 (Ala.Civ.App. 1984).
For a similar situation involving the change of a case name, see Martin v. Burkhimer, 565 So.2d 1 (Ala. 1989), L.F.B. v. K.M.M., 599 So.2d 1178 (Ala.Civ.App.1991), and Ex parte L.F.B., 599 So.2d 1179 (Ala. 1992).