683 So.2d 1010 (1996)
Ex parte C.A.P., W.H.P., and A.C.P.[1] and
Ex parte A.C.P., by and through his guardian ad litem.
(In re J.W.O. v. C.A.P., W.H.P., and A.C.P.).
1951057, 1951058.
Supreme Court of Alabama.
July 19, 1996.
Virginia A. Vinson of Wilkinson & Vinson, Birmingham, for petitioners in 1951057.
Julie Marks, Birmingham, guardian ad litem in 1951058.
David Gespass, Birmingham, for respondent J.W.O.
William Prendergast and Lois Brasfield, Asst. Attys. Gen., Department of Human Resources, for amicus curiae State of Alabama Dept. of Human Resources, in support of petitioners.
HOUSTON, Justice.
In September 1994, J.W.O. filed a declaratory judgment action against C.A.P. ("the mother"), W.H.P. ("the husband"), and A.C.P. ("the child"), seeking a judgment declaring that he was the natural and legal father of the child and requesting that the court grant him visitation and order him to pay child support. In the complaint, J.W.O. alleged that he had cohabited with the mother; *1011 that the child was conceived during the period of cohabitation; that after the relationship between J.W.O. and the mother ended, the mother married W.H.P.; and that the child was born two months later. In December 1994, J.W.O. moved the trial court to order a blood test to determine the biological paternity of the child. In February 1995, the guardian ad litem for the child, joined by the mother and the husband, moved to dismiss on the ground that under the Alabama Uniform Parentage Act, Ala.Code 1975, § 26-17-1 et seq., J.W.O. lacked standing to initiate an action to establish paternity. The trial court granted the motion. In a 3-2 decision, the Court of Civil Appeals reversed the judgment of dismissal and remanded the case for further proceedings, holding that, because the child was not conceived during the marriage, "The policy considerations militating against the arguments of the man claiming to be the father in [Ex parte Presse, 554 So.2d 406 (Ala.1989)], do not apply to J.W.O." J.W.O. v. C.A.P., 683 So.2d 1004, 1006 (Ala. Civ.App.1996). The mother, the husband, and the guardian ad litem for the child petitioned for certiorari review, which the Court granted.
The mother, the husband, and the guardian ad litem maintain that pursuant to Ala. Code 1975, § 26-17-5(a)(1), the husband is presumed to be the natural father of the child because he was married to the mother when the child was born. They also assert that in reversing the trial court's holding that J.W.O. lacked standing, the Court of Civil Appeals misinterpreted Presse and put misplaced reliance and too much emphasis on the phrase "`conceived and born during the marriage.'" According to the mother, the husband, and the guardian ad litem, the basis of the holding in Presse was not whether the child was conceived during the marriage, but rather whether public policy considerations allow a man to destroy the legitimate relationship between the child and the presumed fatherthat is, that the time of conception was simply not a factor in the Presse decision, yet the Court of Civil Appeals used this distinction to hold Presse inapplicable to the facts of this case.
J.W.O. contends that because he "openly [held] out" the child as his own, a presumption exists that he is the father of the child.
Section 26-17-5 provides six situations that give rise to a presumption of a father/child relationship. The pertinent provisions of that section are as follows:
"(a) A man is presumed to be the natural father of a child if:
"(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;
". . . .
"(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child[.]"
A presumption of paternity may be rebutted only by clear and convincing evidence, and when conflicting presumptions arise, "that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control." Ala.Code 1975, § 26-17-5(b).
In Ex parte Presse, 554 So.2d at 412, the Court held that the "public policy considerations" on which a husband is presumed to be the father of the wife's child are weightier than the other presumptions under § 26-17-5:
"[I]t is not logical that two men could be presumed to be the child's father. The presumption in favor of [the husband] is an ancient one, supported by logic, common sense, and justice."
Furthermore, the Presse Court held:
"[A]s in Michael H. [v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (which was a plurality opinion, in which the United States Supreme Court held that a natural father had no constitutionally protected fundamental liberty interest in establishing a relationship with a child born to a married woman living with her husband), the legal question is whether a man has standing to bring an action seeking to declare a child illegitimate and to have *1012 himself declared the father of that child. This is not permitted under the UPA, as long as there is a presumed father, pursuant to § 26-17-5(a)(1), who has not disclaimed his status as the child's father; consequently, another man ... has no standing to challenge the presumed paternity of that child. Put another way, so long as the presumed father persists in maintaining his parental status, not even the subsequent marriage of the child's mother to another man can create standing in the other man to challenge the presumed father's parental relationship."
554 So.2d at 418.
The Court in Presse did not base its decision on whether the child was conceived during the marriage, and § 26-17-5(a)(1) does not require that the child be conceived during the marriage to make the husband the presumed father. Rather, all that is required, under either caselaw or statute, is that the child be born during the marriage. The Code uses the word "birth" as the benchmark for establishing presumptions of paternity, not the time of conception. See also Foster v. Whitley, 564 So.2d 990 (Ala. Civ.App.1990), in which Whitley sought to intervene in a divorce proceeding, claiming to be the father of a minor child of the marriage, and in which the husband, as in this case, never contended that he was not the father of the child. Relying on Ex parte Presse, supra, and discounting the argument that Whitley was the presumed father under § 26-17-5(a)(4) because he openly held the child out as his own, the Court of Civil Appeals in Foster, 564 So.2d at 991, held that Whitley had no standing to challenge paternity:
"[S]ince the husband was married to the mother at the time of the birth, we find that § 26-17-5(a)(1) controls and that the husband is the presumed father under that section."
See also Leonard v. Leonard, 360 So.2d 710 (Ala.1978).
Neither the Court in Ex parte Presse, nor the legislature by its enactment of § 26-17-5, intended the result reached in this case by the Court of Civil Appealsthat because the child was not conceived during the mother's marriage J.W.O., an outsider as to the marriage, had standing to attempt to establish his paternity notwithstanding the fact that the husband had not disclaimed, but rather maintained, his parental status. Furthermore, although the Court of Civil Appeals found that J.W.O. had held the child out as his own, there is no evidence in the record to support that finding other than J.W.O.'s allegation that he was the biological father. Thus, J.W.O.'s interest in judicially establishing his alleged biological relationship to the child is outweighed by the obvious objectives of the Alabama Uniform Parentage Act, which are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever possible.
A man not presumed to be the father, but alleging himself to be the father, may institute an action to have himself declared the father only when the child has no presumed father. § 26-17-6(c). That is not the case here.
We reverse the judgment of the Court of Civil Appeals and remand the case for proceedings consistent with this opinion.
1951057 REVERSED AND REMANDED.
1951058 REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
MADDOX and ALMON, JJ., dissent.
MADDOX, Justice (dissenting.)
I must respectfully dissent because I believe J.W.O. has the requisite standing to institute this paternity action. See, Ex parte Presse, 554 So.2d 406, 419 (Ala.1989) (Maddox, J., dissenting).
NOTES
[1] In their brief to this Court, the petitioners point out that in their application for rehearing in the Court of Civil Appeals they asked that court to acknowledge that C.A.P.'s correct initials are C.H.P. and that W.H.P.'s correct initials are W.L.P. However, nothing in the record verifies that assertion. Their petition was filed under the initials C.A.P. and W.H.P.