CRAWLEY, Judge.
D.J.M. (“the child”) was born on July 15, 1999, while H.M. (“the mother”) was married to J.M. (“the presumed father”); although some question exists as to whether that marriage was void, pursuant to Ala. Code 1975, § 26-17-5(a)(2), J.M. would be the presumed father of the child even if the marriage was void.[1] In June 2000, the presumed father was granted custody of the child pursuant to dependency order; that order does not appear in the record.
When the presumed father died in October 2003, the child’s adult half sister, A.R. (“the half sister”), petitioned in the juvenile court for and received pendente lite custody of the child. The mother petitioned for custody as well. W.D.R. (“the alleged biological father”) and A.D.R. (“the alleged aunt”) each moved to intervene in the dependency action, seeking an adjudication of paternity in the alleged biological father and custody; the alleged biological father later amended his petition to withdraw his request for custody and instead requested that the alleged aunt be given custody. The juvenile court denied the alleged biological father’s and the alleged aunt’s petitions to intervene. They appeal; however, the appellate brief they filed addresses only whether the alleged biological father has standing to pursue a paternity action and does not discuss the alleged aunt’s independent right to intervene in the dependency action. Accordingly, because no arguments are made in the brief pertaining to the denial of the alleged aunt’s motion to intervene, we affirm the juvenile court’s order insofar as it denied her petition to intervene. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996).
The juvenile court’s order denying the alleged biological father’s petition to intervene states no reason for the court’s decision. However, the half sister argued that, pursuant to P.G. v. G.H., 857 So.2d 823 (Ala.Civ.App.2002) (holding that a putative father who had had an affair with the married mother of a child lacked standing to institute a paternity action when the mother’s husband persisted in his presumption of paternity of the child), the alleged biological father lacked standing because the child had a presumed father under § 26-17-5(a)(l). See Ex parte Presse, 554 So.2d 406 (Ala.1989) (creating the rule regarding an alleged biological father’s standing in cases where the child has a presumed father under § 26-17-5(a)(1)). Although the alleged biological father argues in his brief that he was not foreclosed from pursuing his paternity action on the ground of res judicata, another ground argued below by the half sister as a basis for foreclosing the alleged biological father’s action, the half sister appears to admit in her appellate brief that the *329 doctrine of res judicata has no application to the present case because the issue is whether the alleged biological father has standing to pursue a paternity adjudication, not whether the alleged biological father would be bound by the prior dependency judgment wherein the presumed father was awarded custody of the child. See, generally, Ex parte Snow, 508 So.2d 266 (Ala.1987) (holding that a child who was neither a party nor represented by a guardian ad litem in a prior paternity action in which a man was declared not to be her father was not bound by that prior judgment under principles of res judicata because she was not in privity with the mother, who instituted the prior action); and T.K.S. v. State ex rel. M.S.B., 673 So.2d 429, 432 (Ala.Civ.App.1995) (same). We agree and therefore will not discuss the application of the doctrine of res judi-cata in the present case.
Rule 24, Ala. R. Civ. P., governs intervention. It provides:
“(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.”
This court has explained the purpose of Rule 24 as follows:
“[R]ule [24] allows intervention as of right in certain circumstances and with permission of the court in others. The purpose of this rule is to anticipate future litigation, to relieve the intervenor from possible prejudice of stare decisis in later litigation involving the same questions of law and fact to which the unsuccessful applicant] for intervention is finally a party and to discourage [a] multiplicity of lawsuits.”
Pruitt v. Marshall County Dep’t of Pensions & Sec., 494 So.2d 439, 442 (Ala.Civ.App.1986) (citations omitted).
Pruitt involved the application of the principles regarding intervention in a case where the putative father wished to intervene to establish paternity in a termination-of-parental-rights action against the mother of the child. Pruitt, 494 So.2d at 442. In discussing the putative father’s right to intervene to establish paternity in Pruitt, we restated our earlier conclusion that “ ‘the matter of custody of a child is a matter of such interest as to provide intervention of right.’ ” Id. (quoting Finkenbinder v. Burton, 452 So.2d 880, 883 (Ala.Civ.App.1984), superseded by statute as noted in Foster v. Whitley, 564 So.2d 990, 991 (Ala.Civ.App.1990)). We reversed the trial court’s denial of the putative father’s intervention petition in Pruitt because we held that the putative father could intervene as of right because he had “such an interest [as would provide intervention of right] in determining paternity of a child in a termination of parental rights case.” Pruitt, 494 So.2d at 442.
As noted above, the Pruitt court relied in part on a statement of law from Finken-binder, which reversed the denial of a biological father’s petition to intervene in a custody-modification proceeding to prove that he was the father of a child born during the mother’s marriage to another man. Finkenbinder, 452 So.2d at 884. Although Finkenbinder was recognized as being superseded by the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala. Code 1975 (“the AUPA”), see Foster, 564 So.2d at 991, and clearly would no longer have any precedential value insofar as it *330 holds that a man claiming paternity of a child who was born during the marriage of the mother to another man has standing to pursue a paternity action without a determination whether the husband/presumed father persists in his presumption of paternity, see Ex parte Presse, 554 So.2d at 411, discussed infra, the court’s conclusion in Finkenbinder that “the matter of custody of a child to which one seeks to establish paternity is a matter of such interest as to provide intervention of right,” Finkenbinder, 452 So.2d at 883, would not be affected by the changes in the law regarding standing to institute a paternity action. Accordingly, we conclude that the alleged biological father should have been permitted to intervene in the dependency action as of right. However, as the trial court was presented with and clearly considered the half sister’s argument that the alleged biological father lacked standing in denying his petition to intervene, we will further discuss the standing issue.
Our supreme court, in Ex parte Presse, considered whether “a man claiming to be the father of a child conceived and born during the marriage of its mother to another man [has] standing under the [AUPA] to initiate an action to establish that he is the father of the child, where the presumed father persists in the presumption that he is the father.” Ex parte Presse, 554 So.2d at 411. The court answered the question in the negative, determining that the man married to the mother at the time of the child’s conception and birth was a presumed father whose presumption was weightier than any other presumption of paternity provided in the statute as a matter of public policy and logic, thus foreclosing another man from challenging the child’s paternity. Id. at 412. Since that time, several cases have repeatedly held that a man cannot challenge the paternity of a child who was born during the marriage of the mother to another man as long as that other man persists in his presumption of paternity. See, e.g., Ex parte C.A.P., 683 So.2d 1010 (Ala.1996); and M.H.E. v. B.E., 864 So.2d 351 (Ala.Civ.App.2002).
The presumed father’s presumption of paternity in Ex parte Presse arose from § 26 — IT—5(a)(1), the presumption that a child born during a marriage or within 300 days after the termination of a marriage is the child of the husband. In fact, although some of the wording in Ex parte Presse may appear to refer to “presumed fathers” in general, the true holding of Ex parte Presse was based specifically upon the application of § 26-17-5(a)(l). The presumed father’s presumption in the present case may in fact be based on § 26-17-5(a)(2), the provision under which a man is presumed to be the father of a child if the child is born after an attempted marriage “solemnized in apparent compliance with law” that “is or could be declared invalid.” In light of the statement in Ex parte Presse that the AUPA “espouses principles that seek to protect the sanctity of family relationships” and the court’s determination that the weightier presumption is, at all times, the marital presumption, Ex parte Presse, 554 So.2d at 412, we do not consider the fact that, in the present case, the presumed father’s presumption may be based on § 26-17-5(a)(2) instead of § 26-17 — 5(a)(1) makes his presumption under that subsection, which is based on marriage, albeit a possibly void one, any less weightier, at least in comparison to a lesser presumption (that is, a presumption other than § 26-17-5(a)(l)) or no presumption at all.
The alleged biological father asserted in his petition to intervene that he is a presumed father under Ala.Code 1975, § 26-17-5(a)(4), which provides that a man who receives a child into his home or otherwise *331 holds out that child as his own is entitled to a presumption of paternity. The alleged biological father bases his assertion of the § 26-17-5(a)(4) presumption on the following alleged facts: that he cohabited with the mother, that he received the child into his home and otherwise openly held the child out as his own, that he provided support for the child, and that he had exercised visitation with the child since its birth. The alleged aunt, in her petition, further alleged that she, and not the half sister, had provided for the “care, custody and control” of the child since March 28, 2001. In answers to interrogatories contained in the record, the mother indicated that she had paid some money for the support of the child to the alleged aunt and that she had visited the child in the home of the alleged aunt.
The juvenile court held a hearing on the alleged biological father’s petition to intervene; however, the court heard only arguments of counsel regarding whether the alleged biological father had standing to assert his paternity claim. We have recently held that a man seeking to establish paternity of a child born during the mother’s marriage to another man must be given the opportunity to establish standing in an evidentiary hearing where he and others may present evidence bearing on whether the presumed father, who was deceased, had persisted in his presumption of paternity. J.O.J. v. R.R., 895 So.2d 336, 340 (Ala.Civ.App.2004). Because the facts concerning who had actual physical custody of the child and why that person had custody after the presumed father had been awarded custody in the June 2000 dependency order are unclear based on the allegations in the pleadings and other items in the record, we cannot conclude as a matter of law that the presumed father persisted in his presumption of paternity and therefore that the alleged biological father is precluded from maintaining an action to prove his paternity of the child. Therefore, we reverse the denial of the alleged biological father’s petition to intervene and remand the cause for the juvenile court to permit the alleged biological father to intervene in the action and to hold a hearing at which the parties may present evidence bearing on whether the presumed father persisted in his presumption of paternity.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.

. Section 26-17-5 reads, in pertinent part:
"(a) A man is presumed to be the natural father of a child if any of the following apply:
[[Image here]]
"(2) Before the child's birth he and the child’s natural mother have attempted to mariy each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
“a. If the attempted marriage may be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after the termination of the attempted marriage by death, annulment, declaration of invalidity, or divorce; or
“b. If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.”