MOORE, Judge.
This is the second time these parties have been before this court. See J.W. v. C.H., 963 So.2d 114 (Ala.Civ.App.2007) (“J.W. I”). In J.W. I, we reversed the trial court’s judgment and remanded the cause for the trial court to conduct further proceedings regarding the paternity of A.H. “(the child”). Id. at 120. On remand to the trial court, J.W., a man claiming to be the child’s biological father, filed, among other things, a “Motion For Review of Dependency and Paternity and a Motion to Stay Transfer of Custody Pending Review Hearing.” C.H., the child’s presumptive father, objected to a stay of the transfer of custody. On March 14, 2007, the trial court denied J.W.’s motion to stay the transfer of custody but set the issue of paternity for a “settlement docket.” The trial court also recognized that S.S., the mother, C.H., and J.W. were all necessary parties to the paternity determination.
On that same date, J.W. filed with the trial court a petition for custody. J.W. also moved the trial court to retain jurisdiction of the paternity dispute, despite the fact that C.H. and the child resided in Georgia. On March 23, 2007, J.W. moved to “continue to intervene” as a party in the paternity action.
C.H. objected to J.W.’s motion to intervene, arguing, among other things, that J.W. had no standing to intervene in the paternity action. C.H. also moved to dismiss the custody petition filed by J.W.
On March 30, 2007, the trial court appointed a guardian ad litem for the child and an attorney to represent the mother. The trial court also ordered the parties to brief the pending issues by April 3, 2007.
On April 3, 2007, J.W. submitted his brief to the trial court. He asserted that he had definitive proof that he was the child’s biological father and that he and the mother had resolved their differences and were now working together to regain custody of their child. The mother submitted an affidavit in support of J.W.’s arguments and asserted that she had recently filed her own motion for a paternity determination.
On April 4, 2007, C.H. submitted his brief to the trial court, pointing out that he had filed an acknowledgment of paternity at the time of the child’s birth and that he had lived with the mother and the child from the time of the child’s birth until he was deployed to an overseas military post, at which time the mother had taken the child to Alabama. C.H. argued that his acknowledgment of paternity conclusively established that he was the father of the child and that J.W.’s request for a paternity determination and for custody of the child must, therefore, be dismissed based on a lack of standing.
On April 13, 2007, the trial court entered its judgment, stating:
“(1) That [C.H.] took sufficient action to acknowledge paternity by placing his name on the child’s birth certificate and financially caring for the child from birth.
“(2) That [C.H.] is the presumptive father of the minor child sub judice.
“(3) That [J.W.J’s petition was filed after the presumption of paternity attached to [C.H.]
“Therefore, the Court finds that [J.W.] had no standing to file his petition and the same is hereby dismissed.
“The Court finds, with respect to the visitation between the child and [J.W.], *563 that the only authority this Court has to grant visitation to a non-parent is pursuant to Section 30-3-4 of the Code of Alabama and [J.W.] does not fit those parameters. Therefore, [J.W.J’s Petition for Visitation is denied.”
On April 16, 2007 — shortly after the trial court had entered its judgment — the mother answered J.W.’s custody petition. In connection with that answer, the mother asserted a counterclaim, seeking custody of the child on her own behalf.
On April 24, 2007, J.W. filed a notice of appeal from that portion of the trial court’s judgment dismissing his petition for a paternity determination. We reverse and remand.

Standard of Review

Alabama appellate courts review the application of law to facts de novo. See, e.g., Traweek v. Lincoln, 984 So.2d 439, 443 (Ala.Civ.App.2007). A trial court’s determinations on questions of law are not subject to the ore tenus standard of review and carry no presumption of correctness on appeal. Id.

Analysis

Section 26-17-5, Ala.Code 1975, addresses the manner in which a presumption of paternity may arise. That section provides, in pertinent part:
“(a) A man is presumed to be the natural father of a child if any of the following apply:
[[Image here]]
“(4) While the child is under the age of majority, he receives the child into his home or otherwise openly holds out the child as his natural child.
“(5) He acknowledges his paternity of the child in a writing filed in accordance with provisions of the legitimation statute.
“(6) He and the child’s mother have executed an affidavit of paternity in accordance with the provisions of this chapter.
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
In this case, it is undisputed by the parties that C.H. executed an affidavit of paternity while at the hospital at the time of the child’s birth and that C.H.’s name was placed on the child’s birth certificate.[1] Thus, pursuant to § 26-17-5(a)(6), Ala.Code 1975, C.H. is a “presumed father” of the child. However, as recognized in L.L.M. v. J.M.T., 964 So.2d 66, 72-73 (Ala.Civ.App.2007), a man’s voluntary acknowledgment of paternity, signed at the birth of a child born out of wedlock, pursuant to the hospital paternity acknowledgment program, does not conclusively establish paternity, as defined by Alabama law. Thus, although C.H.’s actions gave rise to a presumption of paternity, C.H.’s voluntary acknowledgment of paternity did not foreclose a later challenge to that presumption of paternity. L.L.M., 964 So.2d at 72-73.
*564 Additionally, as we recognized in J.W. I, C.H. also qualifies as a “presumed father” of the child pursuant to § 26-17-5(a)(4), Ala.Code 1975, because, while the child was under the age of majority, C.H. received the child into his home and openly held her out as his natural child. See J.W. I, 963 So.2d at 120.
We also note that, like C.H., J.W. qualifies, pursuant to § 26-17-5(a)(4), as a “presumed father” because, after C.H. was deployed overseas to his military post, the mother and the child returned to Alabama and lived with J.W., who subsequently held the child out as his own. Therefore, pursuant to § 26-17-5(a)(4), J.W. is also a “presumed father” of the child.
Section 26-17-6, Ala.Code 1975, addresses who may bring an action to determine the existence or nonexistence of a father and child relationship. Subsection (b) of that section provides that “[a]ny interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).” Because C.H.’s presumption of paternity arose under § 26-17-5(a)(4) and (a)(6), J.W. has standing to challenge that presumption of paternity.
Additionally, the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala. Code.1975, addresses the parties who must be joined in an action to determine a father-child relationship. Section 26-17-11, Ala.Code 1975, provides, in pertinent part:
“The natural mother, each man presumed to be the father under the provisions of Section 26-17-5, and each man alleged to be the natural father, shall be made parties or, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard.”
Therefore, regardless of whether J.W. was entitled to pursue his own challenge to a paternity determination regarding the child, J.W. is a necessary party to any paternity action regarding the child, pursuant to § 26-17-11.
Based on these Code sections, we conclude that J.W., like C.H., is a presumed father to the child, pursuant to § 26-17-5(a)(4).[2] We also conclude that J.W. has standing to seek a paternity determination as to the child, pursuant to § 26-17-6(b). Finally, we conclude that J.W. is a necessary party to any paternity determination regarding the child, pursuant to § 26-17-11.
For the foregoing reasons, we reverse that portion of the trial court’s judgment dismissing J.W.’s petition for a paternity determination,[3] and we remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Although the record does not contain a copy of this affidavit of paternity, the mother admits that C.H. signed the affidavit of paternity at the time of the child’s birth. Additionally, J.W. “believes that C.H. executed the affidavit of paternity in the State of Georgia.” (J.W.’s brief at 13.) Therefore, this issue is undisputed.

. We also note that § 26-17-5(b), Ala.Code 1975, addresses the situation in which two conflicting presumptions of paternity exist. That subsection states that "[i]n the event two or more conflicting presumptions arise, that which is founded on the weightier considerations of public policy and logic, as evidenced by the facts, shall control.”

. J.W.'s motion for a paternity determination also purported to petition the court for custody of the child. Because the issue of custody is not before us, we express no opinion on that issue.