MOORE, Judge,
dissenting.
I respectfully, dissent.
Section 26-17-204(a)(l), Ala.Code 1975, provides that a man becomes a presumed father of a child if “he and the mother of the child are married to each other and the child is born during the marriage.” In this case, J.J.V. (“the child”) was bom during the marriage of R.M. (“the mother”) and her husband, D.V., making D.V. a presumed father of the child. Pursuant to § 26-17-607(a), Ala.Code 1975, a part of the Alabama Uniform Parentage Act (“the AUPA”), § 26-17-101 et seq., Ala.Code 1975, “[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.” In this case, the mother moved to dismiss a paternity action filed by the *733 child’s biological father, based on § 26-17-607(a). J.O.J. disputed that D.V. had persisted in his claim of paternity,'so he requested an evidentiary hearing on that point. See W.D.R. v. H.M., 897 So.2d 327, 331 (Ala.Civ.App.2004) (“[A] man seeking to establish paternity of a child born during the mother’s marriage to another man must be given the opportunity to establish standing in an evidentiary hearing where he and others may present evidence bearing on whether the presumed father ... had persisted in his presumption of paternity.”).
During the requested hearing, D.V. testified that he was married to the mother; that he had taken the mother to prenatal doctor visits; that the child had been born during his marriage to the mother; that he was present at the child’s birth; that he had participated in the support and care of the child; that the child and the mother had lived with him for a period; that the child was currently living temporarily in Kenya with the mother and the child’s maternal grandparents but that, upon the child’s return from Kenya, he intended to resume paternal care of the child; and that he wanted to persist in his rights as a presumed father of the child. That evidence established a prima facie ease that D.V. was a presumed father of the child who was persisting in his claim of paternity.
Counsel for J.O.J. began to question D.V. about his role in the lives of the mother and the child following the birth of the child. After D.V. admitted' that the mother had conceived the child while she was living with J.O.J. in an adulterous relationship, that D.V. had not paid for the apartment in which the mother - resided, and that D.V. had not provided postnatal medical care for the child, counsel for the mother objected to any further questioning along that line, stating;
“The standing issue is whether [J.O.J.] has a right to- proceed at all. If [D.V.] insists on his rights as a father, there is no standing. It would just be like me coming and - asking for" custody of the child, and I have no standing to do that either. Whether [D.V.’s] a good father or a bad father or his involveníént with the child is not relevant to [J.O.J.’s] standing.”
Counsel for J.O.J. responded that he was attempting to prove that D.V. had not, in fact, acted as a father to the child after the child’s birth and, thus, that D.V. had not persisted in his claim of paternity throughout the life of the child.
Counsel for J.O.J. further responded that he intended to call J.O.J. as a witness to establish that J.O.J. had become the presumed father of the child by holding the child out as his own and by assuming the paternal role toward the child to the exclusion of D.V. See § 26-17-204(a)(5), Ala.Code 1975 (a man becomes a presumed father if, “while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child”). Counsel for J.O.J. argued that, if J.O.J. had also acquired the status of a presumed father, the court would have to resolve which of the two men would be declared the legal father of the" child based on § 26-17-607(b), Ala.Code 1975 (“In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.”).
The juvenile court ultimately denied J.O.J. the right to present any evidence on either point, ruling in its .final judgment:
*734 “At [the] hearing, [D.V.] testified to th[e] fact he is the husband of the Mother and was the Husband of the mother at the time of the conception and birth of the child. [D.V.] further testified that he wished to persist in his status as the legal father of the child. Therefore under Alabama Code [1975, § ] 26-17-607, this Court finds that the [biological] father in this case lacks standing to persist in his claim of paternity.”
J.O.J. filed a postjudgment motion, reasserting that he had a right to prove that D.V. had not consistently acted as a father to the child and that he, J.O.J., was also a presumed father of the child with a conflicting presumptive paternal right to the child superior to that of D.V. The juvenile court denied that motion. I believe that the juvenile court erred in preventing J.O.J. from presenting evidence to establish his claims and in denying the post-judgment motion filed by J.O.J.
Section 26-17-607(a) follows Ex parte Presse, 554 So.2d 406 (Ala.1989). In that case, the mother conceived the child in an adulterous relationship with Lynn Koene-mann in 1977. The mother’s husband, Norman Presse, raised the child for the next three years and was awarded custody of the child when he divorced the mother in 1980. The mother later married Koene-mann and obtained physical custody of the child, subject to Presse’s liberal visitation rights, which he duly exercised. The mother and Koenemann filed a paternity action, proving that Koenemann was the biological father of the child and obtaining a judgment declaring his paternity. After this court affirmed that judgment, our supreme court reversed this court’s judgment, holding that, “[u]nder the facts of this case,” so long as Presse persisted in the presumption that he was the father of the child, no one had standing to maintain an action to prove otherwise. 554 So.2d at 411. The supreme court reasoned that Presse was the only presumed father of the child, rejecting Koenemann’s claim that he, too, was a presumed father because he had taken the child into his home. The supreme court held that the 1984 Alabama Uniform Parentage Act, specifically former § 26-17-6(c), Ala.Code 1975, did not grant to anyone standing to contest the paternity of a presumed father who had not disavowed his paternity but who, instead, had remained steadfastly committed to fulfilling his duties as the legal father of the child. 554 So.2d at 412-18.
The Alabama Comment to § 26-17-607 provides:
“Subsection (a) follows Ex parte Presse, 554 So.2d 406 (Ala.1989) and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein. Once the presumed father ceases to persist in his parentage, then an action can be brought”
(Emphasis added.) As that comment makes clear, § 26-17-607(a) is designed to maintain the stability of a child’s existing familial relationship with his or her presumed father. Section 26-17-607(a) plainly applies when the husband of a mother is the only presumed father of the mother’s child and he has formed a committed paternal relationship with the child that he insists on continuing. In that event, “the” presumed father clearly “persists in his status as the legal father of a child” within the meaning of § 26-17-607(a) and Ex parte Presse.
But the policy behind Ex parte Presse and § 26-17-607(a) fails when the husband of the mother voluntarily allows the child’s biological father to parent the child so that the biological father gains presumed-father status under § 26-17~204(a)(5). Under those circumstances, it must be considered that the husband has ceased to persist in *735 his parentage, i.e., that the husband has not continuously and steadfastly acted as the father of the child in opposition to the claim of the biological father. See Merriam-Webster’s Collegiate Dictionary 924 (11th ed.2003) (defining “persist” as meaning, among other things, “to take a stand, stand firm,” “to go on resolutely or stubbornly in spite of opposition, importunity, or warning,” or “to remain unchanged or fixed in a specified character, condition, or position”). The law, by preventing the biological father from maintaining a paternity action, would not be preserving the familial relationship between the child and the husband of the mother, but would be thwarting the familial relationship between the child and his or her actual father. The words of § 26-17-607(a) cannot be interpreted to defeat its very purpose. Instead, the law should recognize that conflicting presumptions of paternity have arisen such that § 26-17-607(b), not § 26-17-607(a), controls which of the two men should be considered the legal father of the child. See, e.g., J.W. v. C.H., 988 So.2d 560 (Ala.Civ.App.2008).
In this case, J.O.J. asserted throughout the litigation that, since the birth of the child, he has acted as a father to the child, even having maintained exclusive custody of the child for a period. J.O.J. maintained that he could prove that D.V. had acquiesced to J.O.J.’s acting as the father of the child and that D.V. was only belatedly asserting his status as a presumed father solely to defeat J.O.J.’s paternity action. J.O.J. also contended that he could prove that he had acquired the status of a presumed father through his conduct toward the child and that the facts would show that it would be in the best interests of the child for him, rather than D.V., to continue in his role as the presumed father of the child.
In my opinion, the juvenile court should have permitted J.O.J. to present his evidence. The juvenile court took a rather strict view of § 26-17-607(a) by holding that J.O.J. could not prove standing once D.V. testified to his past role in the life of the child and stated his intent to father the child in the future. J.O.J. had the right to prove that D.V. had, through other past conduct, disavowed his paternity of the child by acceding to J.O.J.’s assumption of the paternal role. Accordingly, I respectfully dissent.
THOMAS, J., concurs.