173 So.2d 566

**Gerald D. KAMP**

v.

**Gisela M. MORANG.**

**7 Div. 641.**

Supreme Court of Alabama.

Sept. 24, 1964.

Rehearing Denied April 15, 1965.

**576**

Ralph D. Porch for Knox, Jones, Woolf & Merrill, Anniston, for appellant.

Sam H. Hamner, Anniston, for appellee.

HARWOOD, Justice.

Gisela M. Morang, nee Oyss, filed a verified complaint in the Domestic Relations Branch of the District of Columbia Court of General Sessions seeking child support from Gerald D. Kamp the putative father of her child. The complaint alleged that Kamp was at the time residing in Anniston, Alabama, and that the Circuit Court of Calhoun County, Alabama, might obtain jurisdiction of Kamp.

Pursuant to an Act of Congress, approved 10 July 1957, entitled "An Act to improve and extend through reciprocal legislation, the enforcement duties of support in the District of Columbia," 71 Stat. 285, the complaint was forwarded to the Circuit Court of Calhoun County, Alabama.

Upon receipt of the complaint the Hon. William C. Bibb, one of the judges of the Circuit Court of Calhoun County, sitting in equity, under our Uniform Reciprocal Enforcement of Support Act (Sections 105–123, Title 34, Code of Alabama 1940), which is in all substantial respects similar to the District of Columbia Act, ordered the matter to be set for hearing on 4 June 1963, that a copy of the order be served on Kamp, and that W. C. Daniel, the Deputy Solicitor of Calhoun County represent Mrs. Morang in the cause.

Thereafter Kamp filed his answer denying he was the father of Mrs. Morang's child, and further that despite his repeated denials of the paternity of the child, but to avoid further harassment, he had entered into a covenant to pay $25.00 per month for the support of the child, and Mrs. Morang covenanted not to sue in the matter; that such written covenant was drawn up after an oral agreement, and the defendant Kamp has made payments pursuant to the agreement, but despite acceptance of the payments Mrs. Morang has refused to sign the written covenant.

The case came on for hearing without Mrs. Morang being present, and was submitted on the petition and affidavit forwarded to the Circuit Court. Upon motion of the respondent, the court entered an order dismissing the cause with prejudice, and taxed the costs against Mrs. Morang.

Thereafter, and within thirty days, Mrs. Morang filed an application for rehearing, asserting that she was prevented from presenting her case by surprise, accident or mistake without fault on her part, and that she had a good and meritorious cause of action.

The application for rehearing was set for hearing by the court for 17 October 1963.

On that day the court entered into a full and complete hearing, and thereafter entered a decree that the respondent Kamp pay to the Register of the Circuit Court of Calhoun County the sum of $45.00 per month for the support of petitioner's son, said sum to be forwarded to the Clerk of the District of Columbia Court of General Sessions. Costs were taxed against the respondent Kamp.

So far as disclosed by the record the court below did not enter any order setting aside the previous order of dismissal.

The evidence introduced below tends to show that in 1948 the appellant, Gerald D. Kamp, was serving in Austria as a member of the United States Army. There he met the appellee, Gisela Oyss, and their acquaintance soon ripened into a liaison. The appellant rented an apartment for occupancy by the appellee. He would spend two or three nights a week in the apartment with the appellee, and from time to time he gave her money.

Appellee became pregnant and gave birth to a son in Linz, Austria in 1950. She contends that the appellant is the father of her child who bore the name for a number of years of Gerald Josef Oyss.

The appellee testified that the appellant bought her a ring and they considered themselves as engaged and she had an announcement of the engagement run in a newspaper.

The appellant testified that he had never acknowledged that he was the father of the appellee's child, and that at the time he was living with the appellee he was married and he could not have considered a marriage to the appellee.

There was introduced in the proceedings below a copy of a document in the German language purporting to an acceptance or acknowledgement by the appellant of the paternity of Gerald Josef Oyss, the illegitimate child of the appellee, born on 31 March 1950, according to birth register No. 2665/1950 from the Register's Office in Linz. This document bears the signature of the appellant and that of the appellee. This document bears the date of 14 January 1952, and purportedly was part of an acknowledgement of paternity proceedings had in a court in Saalfelden, Austria. The document, however, is not authenticated.

The appellant in the course of his military duties left Austria and served in various parts of the world. After his departure the appellee met another American soldier named Morang, and eventually they were married. Morang adopted the appellee's son for the purpose of getting him admitted to the United States when he brought the appellee as his wife to this country. It appears that Morang has now deserted the appellee and her child.

The appellee eventually located the appellant who is now stationed at Fort McClellan in Calhoun County, Alabama.

The appellant has denied that he was the father of the appellee's child, though admitting that he lived with her for several months under the conditions above stated. As to the acknowledgement of paternity document which bears his signature, the appellant testified that he did not read nor understand the German language and that he signed the document on the representation by the appellee that if he signed such document the Austrian government would support her child.

It appears that the appellee made at least three trips to Fort McClellan in connection with her claim against the appellant. On each of her appearances she claimed to be completely without any money whatsoever. On her first visit, at his Captain's request, the appellant sponsored Mrs. Morang for the purpose of getting her a place to stay on the McClellan reservation. On her second visit, she was accompanied by Mr. Morang and her child and on this occasion the appellant's Commanding Officer sponsored the Morangs for the purpose of getting her a place to stay on the reservation. On her third visit no one agreed to sponsor Mrs. Morang.

During these visits there were conferences held between Mrs. Morang, the appellant's Commanding Officer, and an Army Chaplain. In these conferences it was agreed that the appellant, though not acknowledging the paternity of the child, would pay $25.00 per month toward its support, and in return Mrs. Morang would agree not to sue the appellant. A formal covenant not to sue was drawn up by a judge advocate officer on the post.

**578**

Under the provisions of the agreement the payments would begin on 1 March 1963, and continue until the child reached the age of 18 years.

The appellant made three such payments which the appellee accepted. However upon the service of the papers in this support action, the appellant sought legal advice and declined to make further payments.

In June of 1963, the appellee called the appellant to ask why she had not received the June payment. The appellant told her it was because she had filed this suit, and the appellee then told the appellant to disregard and ignore the suit. Thereafter the attorney for the appellant wrote the appellee requesting that she dismiss the legal action and return the covenant properly signed and then the payments would be made in accordance with the agreement. However, the appellee never did execute the written covenant.

The appellant, who is now a sergeant in the Army, is married and has five children.

Assignments of error Nos. 1 and 13, relate to the action of the court in entering its second decree without having entered any ruling or order granting the application for rehearing filed by Mrs. Morang following the decree dismissing her petition with prejudice, and further, in failing to base its order upon any of the grounds alleged in the application for rehearing.

Upon the hearing on the application for rehearing, a full hearing upon the merits was had, and in actuality a trial de novo resulted. This was done without any objections to the procedure being interposed, but with the active participation of both parties. Toward the end of the hearing the record shows the following statement by the court, and responses thereto by respective counsel:

"THE COURT: Now, this matter came up here today on an application for re-hearing, and I understand in the ordinary course of procedure, only the application for re-hearing would be taken up today, but I think both sides have produced a large amount of proof that is not solely connected with the question of getting another hearing. In the event that the application for re-hearing should be granted, would either side want to give any further testimony after the granting of the application for re-hearing, other than what has already been given here today?

"MR. PORCH: No, sir, I don't believe so.

"MR. HAMNER: I think my evidence would be the same, your Honor."

We think implicit in the second decree issued after the full hearing is a granting of the application of the rehearing, even though there be no formal order to that effect.

A judgment may be practically vacated, although not in terms set aside, by the taking of subsequent proceedings in the same action which are inconsistent with the judgment in the case different from the first. 23 Cyc., Judgments, pp. 948, 949, and cases cited in support.

No merit attaches to assignments 1 and 13.

The argument of appellant's counsel as to assignments 3, 4, 5, and 9, is that the court erred in entering its decree awarding the child support in that there had been no prior judicial determination that the appellant was the father of Mrs. Morang's child, nor had there been a public acknowledgement by the appellant of such parenthood.

Under our child support statutes (Sections 89–104, Title 34, Code of Alabama 1940) and our decisional law pertaining thereto, to authorize a decree awarding support against the putative father of a bastard child, the parenthood of the putative father must have been determined by a court of competent jurisdiction, or there must have been an acknowledgement of parenthood by the father. Law v. State, 238 Ala. 428, 191 So. 803.

■ Counsel's argument overlooks the document before the court in Saalfelden in which the appellant accepted the paternity of the child of Mrs. Morang. The document is not certified, and could not be considered ordinarily since without a proper certification it would be inadmissible. See Smith v. State, 35 Ala.App. 580, 50 So.2d 791. However, the document bears the admitted signature of the appellant, and in this aspect it became admissible. The testimony of the appellant that he did not understand any word of German, and did not know the contents of the writing, and was induced to sign the document by the fraudulent representations of Mrs. Morang that it was merely to enable her to have the Austrian government support the child, all went merely to the weight to be accorded such evidence. There are inferences from Mrs. Morang's testimony which tend to contradict the appellant's contentions in regard to his protestations regarding his signing of the document, and the appellant's insistence that he did not understand any German words after living among, and associating daily, with people who spoke that language for some three and one half years, probably taxed the credulity of the lower court.

■ Akin to the assignments of error just above written to is assignment of error No. 8 which asserts error in the admission of an English translation of the German language document, signed by the appellant, whereby he accepted the paternity of Mrs. Morang's child.

Counsel for appellant argues that the admission of this translation was error in that it was not properly authenticated.

It appears, however, that prior to the admission of this translation Mrs. Morang had, without objection, herself translated the German language document into English in virtually the same terms as did the translation admitted over objection. The admission of the written translation could not probably have injuriously affected any substantial rights of the appellant, and reversal will not under these circumstances be predicated on assignment No. 8. Sup.Ct.Rule 45.

Assignments of error Nos. 6, 7, 10, 11, and 12, assert in various ways that error infects the judgment in these proceedings because the appellee without contradiction agreed to accept the sum of $25.00 per month for support of her child and covenanted not to sue the appellant; that she did accept three such monthly payments under this agreement, and then in violation of the agreement she instituted this suit against the appellant. It is the contention of counsel for appellant that the appellee has not come in equity with clean hands and that she is estopped from maintaining this suit.

■■ The purpose of our child support statutes is to secure the enforcement of a duty owing by a parent to his child. Law v. State, supra.

The enforcement of this duty is conferred by statute upon the courts of this State and the authority so confined cannot be abrogated by agreements between individuals.

Further, there is a social interest of the State which must be recognized in its attempt to see that parents support their children. The public having an interest in the proper support of a child, and the child itself having such a right to support, these interests of the public and the child, cannot be bargained away by the individual acts of the parents. See Allen v. Allen, 138 Cal. App.2d 706, 292 P.2d 581; Slattery v. Slattery, 139 Iowa 419, 116 N.W. 608; Josey v. Josey, 114 Okl. 224, 245 P. 844.

While the present suit was instituted by Mrs. Morang, its purpose merely looks toward the support of the child. Irrespective of any right which might arise from the agreement between the appellant and appellee personal to them, the child and society have interests which must be respected, and the courts in sustaining these interests will enforce them whenever it is necessary to do so.

580

These principles are reflected in our child support statutes. Under Section 119, Title 34, Code of Alabama 1940, the court entertaining the child support cases, when acting as the responding State under our reciprocal child support statutes, supra, has the power to subject a respondent to such terms and conditions as the court may deem proper to assure compliance with its orders and in particular, under Subsection (a) (3) of said Section 119 "[t]o require the respondent to make payment at specified intervals to the register of the court or the obligee and to report personally to such register at such times as may be deemed necessary."

Section 120(a) of Title 34 provides that upon the receipt of a payment by a respondent pursuant to any order of the court, such payment is to be transmitted to the court of the initiating State.

The court in the present case did in fact order that the support payments for the support of the appellee's son be paid to the Register of the Circuit Court of Calhoun County, Alabama, and that such payments be forwarded by the said Register to the Clerk of the District of Columbia Court of General Sessions, Domestic Relations Branch.

It is clear therefore that assignments of error Nos. 6, 7, 10, 11, and 12, are without merit.

■ Upon consideration of the evidence, and in light of the respondent's financial condition, and duty of support owed his family, and of Mrs. Morang's prior agreement to accept $25.00 per mont'. for support of her child, we have concluded that the ends of justice would be better served by reducing the support payments from $45.00 per month to $25.00 per month, and it is so ordered.

The respondent testified that his base pay as a sergeant in the United States Army was $325.00 per month at the time of trial, which would be increased to $360.00 per month "under the new bill." The respondent is married and has five children.

The agreement on Mrs. Morang's part to accept $25.00 per month as support for her child was not lightly arrived at, but was the result of conferences between her, the respondent, and respondent's Commanding Officer, and the Chaplain at Fort McClellan. Undoubtedly all of the factors leading to an adjustment of Mrs. Morang's claims were duly considered by the participants in these conferences. We see no reason why the agreement there arrived at should not be highly persuasive in determining the amount of support payments that should be awarded.

Therefore the decree of the lower court is modified to the extent of reducing the support payments awarded to the sum of $25.00 per month. As modified, the decree is due to be affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.