472 So.2d 643 (1985)
Ex parte ANONYMOUS.
(In re ANONYMOUS v. ANONYMOUS).
83-1011.
Supreme Court of Alabama.
May 24, 1985.
Jerry Knight of Hardwick & Knight, Decatur, for petitioner.
Joseph W. Propst, II, Decatur, for respondent.

ON REHEARING EX MERO MOTU
PER CURIAM.
WRIT QUASHED AS IMPROVIDENTLY GRANTED.
MADDOX, JONES, ALMON, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and EMBRY and BEATTY, JJ., dissent.
FAULKNER, J., recused.
TORBERT, Chief Justice (dissenting).
The mother gave birth to a boy on March 1, 1983. The mother and the husband were married at the time of the child's conception, but the third party alleges that he and the mother were cohabiting in Texas at that time. The third party attempted a "legitimation" proceeding in the probate court within 30 days of the child's birth. The mother objected to the proceedings in the probate court, and the husband filed in that court an instrument declaring himself to be the father of the child.
The third party then sought in the circuit court a judgment declaring that the child was illegitimate and that he was the child's biological father. He filed an affidavit alleging that he and the mother had cohabited from April 1982 until October 1982 and that the mother and the husband had no access to each other during those months. The mother and the husband divorced on November 10, 1982.
The trial court granted the motion to dismiss made by the mother and the husband on the grounds that the third party had no standing. The Court of Civil Appeals, 472 So.2d 640, remanded the case to the trial court, holding that the third party did have standing. This Court granted certiorari after an ex mero motu reconsideration of our initial denial of certiorari.
The issue in this case is simply one of standing. Does one claiming to be the biological father of a child who was conceived or born during the marriage of the mother and another man have standing to bring a declaratory judgment action to have the child declared illegitimate and *644 himself declared to be the child's father? I do not believe that he has standing.
For actions commenced since May 7, 1984, the Alabama Uniform Parentage Act, Code 1975, § 26-17-1, et seq. (Cum.Supp. 1984), provides that certain persons can bring an action to determine paternity. Section 26-17-6(c) provides that a man claiming to be the biological father can seek a determination of a father-child relationship if the child has no "presumed father." Here, since the child's presumed father is the husband, the third party would not have standing under the Uniform Parentage Act, and the third party's attorney conceded as much in oral argument. The third party argues, however, that the Act does not apply in this case since it was not in effect when he filed his action. I agree with that proposition. However, it is my opinion that the Uniform Parentage Act was a declaration of the public policy, codifying existing law. The legislature explicitly chose not to grant standing to one claiming to be the natural father of a child with a presumed father. While this Court cannot look at the Act as governing law in this case, we should look at it to determine Alabama's public policy with regard to recognition of those claiming to be biological fathers.
It would be contradictory to say that even though the third party had no standing, he could still bring an action under the Declaratory Judgment Act, Code 1975, § 6-6-220 et seq. The Declaratory Judgment Act is a general statute authorizing certain actions and should not be held to preempt a specific body of law dealing with paternity. In addition, the third party is not entitled to bring the declaratory judgment action under the Declaratory Judgment Act, because he has failed to show the existence of a justiciable controversy. While it is true that he has shown that there is a controversy as to whether he is the child's biological father, he has asked only for abstract, as opposed to specific, relief. This is not the kind of status relief contemplated by the act.
I know of only five cases in which standing has been conferred on one claiming to be the biological father of a child conceived while the mother was married to another man. In Raleigh v. Watkins, 97 Mich.App. 258, 293 N.W.2d 789 (1980), paternity was clearly and convincingly proven before the mother challenged the trial court's decision based on the plaintiff's lack of standing. In In re Paternity of Flynn, 130 Mich. App. 740, 344 N.W.2d 352 (1983), and Joseph v. Alexander, 12 Ohio St.3d 88, 465 N.E.2d 448 (1984), the courts determined that standing was conferred by statute. In R. McG. v. J.W., 200 Colo. 345, 615 P.2d 666 (1980), the court held that the one claiming to be the father had standing because that court felt the Uniform Parentage Act was unconstitutional in that it denied the one claiming to be the father equal protection, because it allowed the natural mother a judicial declaration of paternity against a putative father, but allowed no action by one claiming to be the father to have himself judicially declared the father. In A.B. v. C.D., 150 Ind.App. 535, 277 N.E.2d 599 (1971), the court held that the one claiming to be the father had an expectancy as an heir apparent that was a present interest sufficient to give him standing to bring a declaratory action seeking a judgment that he is the biological father of the child.
I agree with the position adopted by Arizona, Delaware, Wyoming, and Florida on the issue of standing. In Allen v. Sullivan, 139 Ariz. 142, 677 P.2d 305 (1984), the court held that the one claiming to be the father did not have standing under Arizona's paternity statutes to pursue an action to have himself declared the father, because that statute related only to the situation in which an alleged father was the defendant. Wyoming and Delaware have also explicitly refused to confer standing on one who seeks to establish his paternity of a child born while the mother was married to another man. A. v. X, Y, and Z, 641 P.2d 1222 (Wyo.1982), cert. denied, 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982); Petitioner F. v. Respondent R., 430 A.2d 1075 (Del.Super. 1981). These courts, as well as a Florida *645 court, have held that the standing requirement under their states' paternity statutes is constitutionally permissible and is realistically related to the situational differences between unwed fathers on the one hand and unwed mothers and married fathers on the other. Id. See also, Nostrand v. Olivieri, 427 So.2d 374 (Fla.Dist. Ct.App.1983). In Nostrand, the court also held that one claiming to be the father had to prove standing by showing he had manifested a substantial concern for the welfare of the child he claimed to be his illegitimate child.
A holding reflecting this position would not deprive this third party, and those similarly situated, of due process or equal protection of the law. To determine whether the natural father is protected by the due process clause, the Court must apply the substantial relationship test; that is, the Court must determine whether there is a substantial parental relationship established between the child and the one claiming to be the natural father. Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (one claiming to be the natural father of a child placed for adoption had no standing to challenge the adoption because he had failed to establish a substantial relationship with the child in that he had never supported the child and had rarely seen her in the two years since her birth). In Lehr v. Robertson, the United States Supreme Court reviewed its earlier cases dealing with the question of "the extent to which a natural father's biological relationship with his illegitimate child receives protection under the Due Process Clause." The Court emphasized that while the Constitution protects on-going parent-child relationships, "the mere existence of a biological link does not merit equivalent constitutional protection." 463 U.S. at 261, 103 S.Ct. at 2993. The Court in Lehr also repeated its earlier observation in Caban v. Mohammed, 441 U.S. 380, at 397, 99 S.Ct. at 1770: "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." In the instant case, there was no actual parental relationship between the third party and the child, and the third party's complaint did not seek relief that would establish such a relationship.
In order for one claiming to be the father to have a claim of denial of equal protection, he must have been treated differently from the natural mother or married father. In Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), the United States Supreme Court held that a New York statute that allowed an unwed mother but not an unwed father to block adoption by withholding consent violated the equal protection clause. In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court held that the denial of a hearing on the custodial unmarried father's fitness following the mother's death violated the equal protection clause because all other Illinois parents were entitled to a hearing on fitness before the children could be removed from their custody. Stanley dealt with a natural father who had in fact lived with his illegitimate children many years as a family; the Court held his parent-child relationship to be constitutionally protected. Caban and Stanley, further, involved requests for more than just a determination of paternity. The fact that a natural mother but not one claiming to be the father can bring a paternity proceeding does not violate the equal protection clause, because the purpose of the paternity proceeding is for the benefit and the support of the child, not the mother. Kamp v. Morange, 277 Ala. 575, 173 So.2d 566 (1964). See also, Alber v. Alber, 93 Idaho 755, 472 P.2d 321 (1970). But see, R. McG. v. J.W., supra. Here, the child is supported by one presumed by the law to be his father, and I do not believe, when there is a presumed father eager to support the child, that another claiming to be the father is also entitled to bring a paternity proceedingi.e., a proceeding not for the support of the child but to proclaim his paternity of the child.
Even under the holding of the Court of Civil Appeals, the plaintiff's burden is great. In order to prevail, he must prove *646 that it was impossible for the husband of the mother to have had sexual relations with his wife at the probable time of conception. Leonard v. Leonard, 360 So.2d 710 (Ala.1978). Since both the husband and the mother claim that the husband is the father, I do not see how the third party expects to meet his burden. I would reverse the judgment of the Court of Civil Appeals and affirm the trial court's dismissal of the declaratory action on the basis of lack of standing.
If our courts are going to entertain suits of this nature filed prior to the effective date of the Alabama Uniform Parentage Act, then I think it useful to point out that at some point we may have to deal with the difficult questions of establishing equitable time limitations on such actions and the protection of the rights of innocent persons who have acted in good faith reliance on the belief, or legal presumption, that the husband is the father of his wife's child. Under the facts of this particular case, these questions need not be answered now.
EMBRY and BEATTY, JJ., concur.