MURDOCK, Judge.
P.G. and J.G. appeal from a judgment of the DeKalb Circuit Court determining that G.H. was the biological father of a daughter born to P.G. while she was married to J.G. J.G. and P.G. married in 1986 and were married when the child was born in July 1998; J.G. and P.G. had not separated or divorced at the time of trial, and the child was their only child. G.H. was also married at the time the child was born and he and his wife have two children.
On June 6, 2000, G.H. filed a petition pursuant to the Alabama Uniform Parentage Act (“UPA”), Ala.Code 1975, § 26-17-1 et seq.,[1] requesting that the trial court enter an order declaring him to be the father of P.G.’s child, granting him visitation rights with the child, and establishing the amount of child support he would be required to pay for the benefit of the child. J.G. and P.G. filed a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss G.H.’s petition. At the hearing on the Rule 12(b)(6) motion, the parties stipulated that J.G. and P.G. were married at the time of the child’s birth and that J.G. was listed as the father of the child on the child’s birth certificate. The parties also stipulated that a DNA test that P.G. and G.H. had performed on the child without the knowledge of J.G. *825 indicated a 99% probability that G.H. was the biological father of the child. However, J.G. and P.G. persisted in their claim that J.G. was the presumed and legal father of the child, and J.G. and P.G. argued that G.H. had no standing to file an action seeking to establish his paternity of the child. After arguments by the parties’ attorneys, the trial court entered an order denying J.G. and P.G.’s Rule 12(b)(6) motion and appointing a guardian ad litem to represent the child for purposes of G.H.’s petition.
The trial court held an ore tenus hearing on G.H.’s petition and entered a judgment on April 12, 2001, determining that G.H. was the father of the child. In its judgment, the trial court stated that J.G. was entitled to assert the presumption that he was the father of the child because the child was born during his marriage to P.G. The trial court specifically determined that J.G. “held himself out to be the father of the ... child and persists that he is the father of said child, despite his testimony of his apparent sterility.[2] ... [J.G.] has responsibly and lovingly cared for, supported and parented the ... child as a father.”
The trial court further determined that P.G. and G.H. had had an extramarital sexual relationship during a nine-year period ending in April 2000 and that P.G. and G.H. discontinued their relationship on several occasions during that period. The trial court noted that in March 2000 P.G. and G.H. had a paternity test performed without J.G.’s knowledge; that the results of the paternity test were admitted into evidence without objection; that the DNA test results indicated a 99% probability that G.H. was the child’s biological father; and that the parties had stipulated that G.H. was the child’s biological[3] father. The trial court also determined that before April 2000, and without the knowledge of J.G., P.G. and G.H. arranged for G.H. to visit the child on several occasions.
The trial court concluded that the presumption of paternity in favor of J.G. had been rebutted by clear and convincing evidence and that G.H. was the father of the child. The court awarded joint custody of the child to P.G. and G.H., with primary physical custody being awarded to P.G.; awarded G.H. visitation rights with the child; ordered G.H. to pay $681 per month as his child-support obligation; ordered G.H. to provide medical insurance for the child; and changed the child’s name so that the child’s last name coincided with that of G.H.
J.G. and P.G. filed a postjudgment motion, which the trial court denied, and they *826 have appealed to this court.[4] The sole issue that J.G. and P.G. have raised on appeal is whether G.H. had standing, pursuant to the UPA, to file a claim to attempt to establish his alleged paternity of the child.
“When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999); see also Hooten v. Hooten, 754 So.2d 634 (Ala.Civ.App.1999). Section 26-17-6 of the UPA states, in pertinent part:
“(a) A child, a child’s natural mother, or a man presumed to be the child’s father under subdivision (1), (2), or (3) of Section 26-17-5(a), may bring an action at any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (1), (2), or (3) of Section 26-17-5(a), but for purposes of support, the action shall be brought before the child reaches the age of 19; or
“(b) Any interested party may bring an action at any time for the purpose of determining the existence or non-existence of the father and child relationship presumed under subdivision (4) or (5) or (6) of Section 26-17-5(a).
“(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under Section 26-17-5 may be brought by the child, the mother, or personal representative of the child, the public authority chargeable by law with support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor.”
Ala.Code 1975, § 26-17-6 (emphasis added).
Subdivisions (1), (2), and (3) of § 26-17-5(a) provide:
“(a) A man is presumed to be the natural father of a child if any of the following apply:
“(1) He and the child’s natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court.
“(2) Before the child’s birth he and the child’s natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and
“a. If the attempted marriage may be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after the termination of the attempted marriage by death, annulment, declaration of invalidity, or divorce; or
“b. If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.
“(3) After the child’s birth, he and the child’s natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempt *827 ed marriage is or could be declared invalid, and
“a. He has acknowledged his paternity of the child in writing, the writing being filed with the appropriate court or the Office of Vital Statistics; or
“b. With his consent, he is named as the child’s father on the child’s birth certificate; or
“e. He is otherwise obligated to support the child either under a written voluntary promise or by court order.”
G.H. does not fall within any of these three categories. Rather it was undisputed that the child was born to P.G. while she was married to J.G.; the trial court properly determined that under § 26 — 17—5(a)(1) J.G. was the presumed father of the child. The plain language of the UPA does not support the trial court’s finding that G.H. had standing to pursue his paternity action.
In Ex parte Presse, 554 So.2d 406 (Ala.1989), the Alabama Supreme Court addressed whether a third party has standing under the UPA to file an action to establish his paternity of a child who has been born during the mother’s marriage to a presumed father under § 26 — 17—5(a)(1). In that case, the mother and presumed father had divorced within three years after the child’s birth, the mother had married the man who alleged he was the father of the child within three months of her divorce, and the mother had joined in the alleged father’s paternity petition. Ex parte Presse, 554 So.2d at 408. The Alabama Supreme Court noted:
“Upon the [mother and the alleged father’s] request, the court ordered blood tests of all the parties, which indicated that [the presumed father] lacks the red cell antigen N, which is present in the child, ... and is absent in [the mother]. The test also indicated that there is a 99% probability that [the alleged father] is the biological father of [the child].
“Those blood tests were introduced into evidence, along with two other tests. The only tests introduced on [the presumed father’s] behalf were administered upon [the mother, the child, and the presumed father] in 1978. Those particular tests indicated that [the presumed father] could not in any way be excluded as the natural father of [the child]. By stipulation of the parties, no expert witnesses were called to testify concerning the results of the tests.”
Id. Despite the conclusive evidence in favor of the alleged father in Ex parte Presse, the Alabama Supreme Court held that under the UPA, an alleged father does not have “standing to bring an action seeking to declare a child illegitimate and to have himself declared the father of that child” “as long as there is a presumed father, pursuant to § 26 — 17—5(a)(1), who” “persists in maintaining his parental status.” Ex parte Presse, 554 So.2d at 418; see also J.K. v. R.S., 706 So.2d 1262, 1264 (Ala.Civ.App.1997)(“[a] man claiming to be the father of a child born during the marriage of its mother to another man does not have standing under the [UPA] to initiate an action to establish that he is the father of the child, where the presumed father persists in the presumption that he is the father”)(emphasis added); Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala.1996)(“[a] man not presumed to be the father ... may institute an action to have himself declared the father only when the child has no presumed father”)(emphasis added). The Supreme Court emphasized its holding by stating:
‘“Section 26-17-6(c) provides that a man claiming to be the biological father can seek a determination of a father- *828 child relationship if the child has no presumed father. Here, since the child’s presumed father is the husband, the third party would not have standing under the [UPA].... The legislature explicitly chose not to grant standing to one claiming to be the natural father of a child with a presumed father.’ ”
Ex parte Presse, 554 So.2d at 413 (quoting from and “embracing] former Chief Justice Torbert’s dissenting opinion in Ex parte Anonymous, 472 So.2d 643[, 643-44] (Ala.1985)”) (emphasis in Ex parte Presse; footnote omitted); see also Hooten, 754 So.2d at 635 (“[o]ur supreme court has held that no one, including the mother of the child, has standing to challenge a presumed father’s paternity as long as the presumed father persists in claiming paternity of the child”).
In this case, the trial court specifically found that J.G. was the presumed father of the child and that he “held himself out to be the father of the child ... and persisted] that he is the father of [the] child.” The trial court based its decision in favor of G.H. on Ala.Code 1975, § 26-17-5(b), which states, in pertinent part, that “[a] presumption of paternity under [§ 26-17-5(a) ] may be rebutted in an appropriate action only by clear and convincing evidence.” (Emphasis added.) The purpose of § 26-17-5(b) is to set out an evidentiary standard; that section applies “in an appropriate action” and does not expand the substantive rules of standing set forth in § 26-17-6(a).
G.H. attempts to circumvent the applicable rules of standing, recognized in Ex parte Presse and subsequent cases, by arguing that J.G. was not entitled to the presumption stated in § 26-17-5(a)(l) because the parties stipulated that G.H. was the biological father of the child. In essence, G.H. argues that the UPA is not applicable because he proved that J.G. was not the natural father. Clearly, however, the statute that governs the issue of J.G.’s paternity is § 26-17-1 et seq. That statute establishes certain presumptions, including the presumption in § 26-17-5(a)(l) that favors J.G. G.H.’s argument that he proved himself, rather than J.G., to be the natural father of the child, puts the “cart” of a substantive determination before the “horse” of standing to seek such a determination. It is simply another way of saying that in the trial of this case he rebutted the presumption of § 26-17-5(a)(1). However, under Ex parte Presse, and the plain language of § 26-17-6(a), G.H. had no standing even to bring this case.
The Alabama Supreme Court stated in Ex parte Presse that the UPA “espouses principles that seek to protect the sanctity of family relationships by providing a comprehensive statutory network through which a child may enforce its right of support against the presumed father.” Ex parte Presse, 554 So.2d at 412 (emphasis added). The Court further explained its holding with citations to various other authorities. After quoting from Chief Justice Torbert’s dissent in Ex parte Anonymous, 472 So.2d at 643-44, the Presse Court stated:
“ ‘In a case cited by Chief Justice Torbert, the Delaware Supreme Court held that a third party did not have standing to seek custody of or visitation with a child born during the marriage of its mother to another man. The Delaware court held that a man has no constitutionally protected interest in a determination of his parental status regarding a child born during the marriage of its mother to another man who has not disavowed the child’s legitimacy. Further, the court determined that, even assuming that the one claiming to be father has a constitutionally protect *829 ed interest, it would be overridden by the competing public interest. The countervailing interest cited by the court was the protection of the child from confusion, torn affection, and the stigma of illegitimacy. Petitioner F. v. Respondent R., 430 A.2d 1075 (Del.1981).”
Ex parte Presse, 554 So.2d at 413. The Presse Court also noted with approval the position that “ ‘the presumption that the husband of the mother of a child born during marriage is the father of that child — is often said to be one of the strongest presumptions known to the law.’ ” Id. (quoting Note, R. McG. & C.W. v. J.W. & W.W.: The Putative Father’s Right to Standing to Rebut the Marital Presumption of Paternity, 76 N.W.U.L.Rev. 669 (1981)). Finally, the Presse Court quoted at great length from the plurality opinion in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In light of G.H.’s evidentiary argument that he rebutted the presumption of J.G.’s paternity, we note the following portion of Michael H. quoted with approval by our Supreme Court in Ex parte Presse:
“ ‘[The biological father] asserts that requirements of procedural due process prevent the State from terminating his liberty interest in his relationship with his child without affording him an opportunity to demonstrate his paternity in an evidentiary hearing. We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, irrelevant for paternity purposes whether a child conceived during and born into an existing marriage was begotten by someone other than the husband and had a prior relationship with him. As the Court of Appeal phrased it:
“ ‘ “ ‘The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned.’” [Michael H. v. Gerald D.,] 191 Cal.App.3d [995,] 1005, 236 Cal.Rptr. [810,] 816 [(1987)], quoting Vincent B. v. Joan R., 126 Cal.App.3d [619], at 623, 179 Cal.Rptr. [9], at 10 [(1981)].
“ ‘Of course the conclusive presumption not only expresses the State’s substantive policy but also furthers it, excluding inquiries into the child’s paternity that would be destructive of family integrity and privacy.’ ”
Ex parte Presse, 554 So.2d at 415 (quoting Michael H. v. Gerald D., 491 U.S. at 119-20, 109 S.Ct. 2333) (emphasis omitted).
In Ex parte C.A.P., the Alabama Supreme Court stated that when a child is born to a married mother, an alleged father’s
“interest in judicially establishing his alleged biological relationship to [a] child is outweighed by the obvious objectives of the [UPA], which are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever possible.”
Ex parte C.A.P., 683 So.2d at 1012 (emphasis added).
“The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. If a statute is not ambiguous or unclear, the courts are not authorized to indulge in conjecture as to the intent of the Legislature or to *830 look to consequences of the interpretation of the law as written.”
Ex parte Presse, 554 So.2d at 411.
In light of the above-discussed authorities, including particularly our Supreme Court’s decision in Ex parte Presse, the trial court’s judgment determining that G.H. had standing to assert his paternity of P.G.’s child is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.

. G.H.’s petition also stated that, in the alternative, his action was filed as a declaratory-judgment action invoking the equitable powers of the DeKalb Circuit Court. Before the enactment of the UPA, we held that pursuant to Ala.Code 1975, § 6-6-222, a third party could file a declaratory-judgment action to attempt to establish his paternity of a child that had been bom to a married mother. See Anonymous v. Anonymous, 472 So.2d 640 (Ala.Civ.App.1984), writ quashed, 472 So.2d 643 (Ala.1985). In his opinion dissenting from quashing the writ in Ex parte Anonymous, 472 So.2d 643 (Ala.1985), Chief Justice Torbert, joined by Justices Embry and Beatty, stated that a third party did not have standing to file a paternity action under the newly enacted UPA and questioned whether a third party would have standing to file a paternity action pursuant to Ala.Code 1975, § 6-6-222. Ex parte Anonymous, 472 So.2d at 644.
As to a third party's standing under the UPA, as discussed in the text of this opinion, the Alabama Supreme Court, in Ex parte Presse, 554 So.2d 406 (Ala.1989), embraced Chief Justice Torbert's dissent in Ex parte Anonymous. Ex parte Presse, 554 So.2d at 412-13. In the present case, the judgment was based upon the UPA; G.H. has not argued that the judgment could be supported based upon an independent action under § 6-6-222. However, we have stated that the UPA supersedes prior law regarding the right of a third party to establish his alleged paternity of a child who has been born to a married woman. See Foster v. Whitley, 564 So.2d 990 (Ala.Civ.App.1990); see generally Michael H. v. Gerald D., 491 U.S. 110, 125, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989)("even in modern times — when ... the rigid protection of the marital family has in other respects been relaxed — the ability of a person in [G.H.'s] position to claim paternity has not been generally acknowledged”).

. We note that J.G. did not testify that he was sterile. He testified that P.G. had been pregnant on two other occasions during their marriage and that P.G. had prematurely given birth to a stillborn child on both occasions. He also stated that he believed that his presumed child would be his only child “unless it's a miracle from God because it’s apparent that I can’t have children.” He stated that "unless this child is mine, I'm not going to have another child — I mean, through all these years we’ve tried, and everybody seems to try to tell me I can't.”

. J.G. and P.G. stipulated through their attorney that the DNA test results established that G.H. was the child's biological father. However, J.G. testified that “[t]he DNA test isn’t right. I still am the father.... It hasn't proved that I’m not the father.”
G.H. argues that a "natural” parent under the UPA is a biological parent. In light of our holding in this case, we need not address that argument. However, we note that Ala.Code 1975, § 26-17-21, states that ”[i]f ... a wife is inseminated artificially with semen donated by a man not her husband, the husband is treated in law as if he were the natural father of a child thereby conceived.”

. The trial court entered an order staying the effect of its judgment pending the resolution of the appeal.