DONALDSON, Judge.
This appeal involves a claim that a portion of the Alabama Uniform Parentage Act, § 26-17-101 et seq., Ala.Code 1975 (“the AUPA”), is unconstitutional. C.E.G. appeals the judgment of the Tuscaloosa Circuit Court (“the trial court”) dismissing his complaint seeking to establish his paternity of J.R.E. (“the child”) and the right to custody and -visitation with the child. C.E.G.’s complaint was dismissed because, under the AUPA, he does not have the right to maintain an action to establish his paternity of the child. Because we hold that the pertinent provisions of the AUPA are not unconstitutional, we affirm the trial court’s judgment,
' Facts and Procedural History
The child was born on April 9, 2013, to A.L.A. Approximately one month before the child’s birth, T.E., a male, moved into A.L.A.’s residence. Although the record does not establish how long T.E. and A.L.A. had been in a relationship before the move, the record shows that T.E. supported A.L.A, during her pregnancy. Although T.E. and A.L.A. did not marry, the child carries T.E.’s last name, and T.E. and A.L.A are raising the child together. After the child was born, T.E. acknowledged his paternity of the child by signing a document that identified him as the child’s father. The Alabama Certificate of Live Birth pertaining to the child lists T.E. as the father of-the child. It is undisputed that T.E. lives with the child, holds out the child as his own, and provides the child *953 ■with emotional and financial support. C.E.G. and A.L.A. had a dating relationship in 2012. C.E.G. testified that the last time he had sexual relations with A.L.A. was in the middle of October 2012. C.E.G. learned of A.L.A.’s pregnancy in December 2012, after their relationship had ended. C.E.G. contacted A.L.A. about her pregnancy. A.L.A. told C.E.G. that T.E. was the father of the child, .and she asked C.E.G. to leave them alone. A.L.A. testified that she .had calculated the estimated date of the conception of the child based on ultrasound tests and that .she believed that C.E.G. could not have been the biological father of the child.
C.E.G. testified that, when the child was six months old, he saw pictures of the child and received anonymous text messages stating that the child resembled him. About two weeks later, C.E.G. contacted A.L.A., and they agreed to undergo a test to determine the biological paternity of the child. A DNA test conducted on October 25, 2013, showed a 99% probability that C.E.G. is the biological father of the child. T.E. testified that, even after learning of the DNA test results, he continued raising the child and holding out the child as his own.
On November 22, 2013, C.E.G. filed a complaint in the trial court seeking to establish his paternity of the child and to obtain custody and visitation rights with the child. Upon A.L.A.V motion, the trial court entered an order joining T.E. as an indispensable party. A.L.A. and T.E. each filed a motion to dismiss the complaint, alleging that T.E. is the legal and presumed father of the child pursuant to § 26-17-204(a)(5), Ala.Code 1975, a part of the AUPA, and that C.E.G. does not have a right to maintain an action tó establish his paternity of the child. C.E.G. responded to the motions by arguing, in part, that the AUPA is unconstitutional on its face and as applied to-him because it deprives him of due-process and- equal-protection rights and that the AUPA conflicts with precedent disfavoring “equitable adoption.” C.E.G. notified the Attorney General of Alabama, of his constitutional challenge to the AUPA. The attorney general waived his right to participate in the proceedings.
On June 4, 2014, the trial court conducted a hearing during which it received testimony from the parties. On July 17, 2014, the trial court entered a judgment granting the motions to dismiss filed by A.L.A. and T.E. The trial-court cited § 26-17-204(a)(5) ■ and § 26-17-607(a), Ala.Code 1975, in support of its judgment dismissing C.E.G.’s complaint. C.E.G. filed a-timely notice of appeal to this court.

Standard of Review

 “ ‘Our review of constitutional challenges’ to legislative enactments is ' de novo,’ Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). Additionally, acts of the legislature, are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala.1999) (‘In reviewing the constitutionality of a legislative act, this Court will sustain the act “‘unless it is clear beyond reasonable doubt that it is viola-tive of the fundamental law.’ ” White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).’). We approach the question of the constitutionality of a ■legislative act ““with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down -the enactment of a coordinate branch of the government.’ ” ’ Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Moore v. Mobile In *954 firmary Ass’n, 592 So.2d 156, 159 (Ala.1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815).
“Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act[ ] bears the burden ‘to show that [the Act] is not constitutional.’ Board of Trustees of Employees’ Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala.1979) (‘It is. the law, of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality....’).”
State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006).

Discussion

The AUPA “applies to determination of parentage in this state except for matters relating to legitimation and adoption.” § 26-17-103(a), Ala.Code 1975. Section 26-17-602(4) provides that “a man whose paternity of the child is to be adjudicated” may maintain an action to adjudicate parentage pursuant to the AUPA. The right to maintain such an action, however, is subject to the provisions of § 26-17-607(a), which provides that “[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.” Section 26-17-204 defines the ways a man obtains the status of a presumed father:
“(a) A man is presumed to be the father of a child if:
“(1) he and the mother of the child are married to each other and the child is born during the marriage;
“(2) he and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;
“(3) before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce;
“(4) after the child’s birth, he and the child’s mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:
“(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics; or
“(B) with his consent, he is named as the child’s father on the child’s birth certificate; or
“(C) he is otherwise obligated to support the child either under a written voluntary promise or by court order;
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child; or
“(6) he legitimated the child in accordance with Chapter 11 of Title 26.
“(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6. In the event two or more *955 conflicting presumptions arise; that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts,- shall control. The presumption pf paternity is rebutted by a court decree establishing paternity of the child by another man.”
A presumption of paternity can arise when a man “holds out” a child as his natural child pursuant to § 26-17-204(a)(5) (sometimes hereinafter referred to as “the holding-out provision”), regardless of whether he is, or ever has been, married to the child’s mother. See Ex parte T.J., 89 So.3d 744, 749 (Ala.2012). “[T]here is no requirement that, in persisting in a claim as the legal or presumed father of a child, one must believe or have evidence demonstrating that he is the biological father of the child.” D.F.H. v. J.D.G., 125 So.3d 146, 152 (Ala.Civ.App.2013).
. C.E.G. does not dispute the evidence showing that he is not the presumed father of the child, that T.E. is the presumed father of the child pursuant to the holding-out provision, that T.E. persists in asserting his status as the presumed father, and that the application of the holding-out provision and the provisions of § 26-17-607(a) prohibit him from maintaining an action to establish his paternity of the child. C.E.G. contends that his inability to maintain an action to establish his paternity under the AUPA results in an unconstitutional deprivation of his right to due process. C.E.G. challenges the constitutionality of the sections of the AUPA at issue — namely, § 26-17-204(a)(5) and § 26-17-607(a) — on them face as well as in their application to him. See City of Montgomery v. Water Works & Sanitary Sewer Bd. of City of Montgomery, 660 So.2d 588, 595 (Ala.1995) (“an Act, constitutional on its face, could be unconstitutional in its application”). We consider C.E.G.’s arguments to determine whether his inability to maintain an action to establish his paternity under the AUPA violates the guarantees of substantive due process or procedural due process. ■
Section 1 of the Fourteenth Amendment to the United States Constitution provides that a state shall not “deprive any person of life, liberty, or property, without due process of law....”
“ ‘The touchstone of due process is protection of the. individual against arbitrary action of government,’ Wolff v. McDonnell, 418 U.S. 539, 558 (1974), whether the fault,, lies in a denial of fundamental procedural fairness, see, e.g., Fuentes v. Shevin, 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against ‘arbitrary takings’), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, e.g., Daniels v. Williams, 474 U.S. [327], at 331 [ (1986) ] (the substantive-due process guarantee protects against government power arbitrarily and oppressively exercised).”
County of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
 We begin our analysis by considering the interest that C.E.G. asserts has been infringed in order to apply the proper level of scrutiny to the challenged provisions of the AUPA. See Crawford v. State, 92 So.3d 168, 174 (Ala.Crim.App.2011) (“[T]he. substantive due-process analysis must first begin with a careful description of the asserted right.” (citing Reno v. Flores, 507 U.S. 292, 302, 113. S.Ct. 1439, 123 L.Ed.2d 1 (1993))). Alleging that he is the child’s biological father, C.E.G. asserts the right to establish paternity of the child and, thereby, the right to custody of, or *956 visitation with, the child. Because strict scrutiny applies to statutes that affect a fundamental right, we must first determine whether C.E.G. has asserted a fundamental right. Gideon v. Alabama State Ethics Comm’n, 379 So.2d 570, 573-74 (Ala.1980). “Fundamental rights are only those ‘rights and liberties which are, objectively, “deeply rooted in this Nation’s history and tradition” ’ and 1 “implicit' in the concept of ordered liberty,” such that “neither liberty nor justice would exist if they were sacrificed!!.]” ’ [Washington v.] Glucksberg, 521 U.S. [702,] 720-21 [ (1997) ] (citations omitted).” Herring v. State, 100 So.3d 616, 623 (Ala.Crim.App.2011). '“[T]he interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests..'" Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). “The sanctity of the family has always been protected 'by the Constitution ‘because the institution of the family is deeply rooted in this Nation’s history and tradition.’” Herring v. State, 100 So.3d at 623 (quoting Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)).
, In Ex parte Presse, 554 So.2d 406 (Ala.1989), our supreme court considered due-process principles in discussing the then existing statute providing for presumed paternity, which was part of the former AUPA, § 26-17-1 et seq., Ala.Code 1975. See Ex parte T.J., 89 So.3d at 748 n. 3 (“The former- AUPA ... was repealed effective January 1, 2009, and the current AUPA ..'. became effective the same day. The presumptions of paternity listed in former § 26-17-5(a) are similar to the presumptions of 'paternity listed in § 26-17-204(a).”). In Presse, the supreme court held that a man lacked “standing” to assert and establish his paternity of a child born during the marriage of the mother to another man who persisted in the presumption that he was the father. 554 So.2d at 411-12. The man who asserted the right to establish paternity and parental rights regarding the child had evidence of a biological connection with the child. In addition, he had established a relationship with the child that, he claimed, qualified him for a presumption of paternity pursuant to the holding-out provision of the former AUPA. The supreme court determined that the man claiming to be the biological father had not, simply by virtue of a biological connection with the child, established that he had a fundamental right to displace the parental status of the presumed father based on marriage. Id. at 417 (adopting in part the United States Supreme Court’s reasoning in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989)).
C.E.G. is seeking the right to establish paternity that would result in the disruption of the child’s existing family unit and displacement of T.E.’s status as a presumed father, based solely on an assertion of a biological connection with the child. Our supreme court in Ex parte Presse declined to recognize such an asserted right as a fundamental right, and other decisions have declined to place a relationship based merely on biological status ahead of other interests. See, e.g., M.V.S. v. V.M.D., 776 So.2d 142, 146 (Ala.Civ.App.1999) (“[A] biological link with the child does not automatically give the natural father a constitutional right to, withhold consent to an adoption. Instead, the natural father must have established a substantial relationship with the child to merit constitutional protection.”). We, therefore, conclude that the right that C.E.G. asserts is infringed by the AUPA is not a fundamental right.
Unless a- fundamental right is infringed, we apply the rational-basis test to *957 a substantive-due-process challenge. Gideon, 379 So.2d at 574. A statute passes muster under the rational-basis test if it is rationally related to a proper governmental purpose. Id. C.E.G. argues.that, even if the marriage of the mother of a child to a man justifies prohibiting another man from seeking to establish his paternity, the holding-out provision lacks any reasonable justification when the mother is not married to the man presumed to be the father. -C.E.G. notes that, in its discussion of the public-policy considerations, in. Ex parte Presse, the supreme court appears to have found the marital presumption to be a significant factor in its analysis. The decision in Ex parte Presse, however, concerned two conflicting presumptions of paternity within the former AUPA: one presumption based on a child’s being born into a marriage and another presumption based on the holding out provision. The supreme court 'also weighed the marital presumption against the paternity claim based on a biological connection. Although the supreme court held that the marital presumption has a higher priority than the holding out presumption or a biological-connection claim, we do not view Ex parte Presse as establishing that the holding-out provision lacks any public-policy rationale in any context, particularly When the mother has not married either man asserting paternity. The supreme court in Ex parte Presse stated that it was guided by principles of the former AUPA “that seek to protect the sanctity of family relationships Id. at 412. Regarding the public-policy considerations of the former AUPA, the supreme court recognized that “ ‘[t]he legislature explicitly chose not to grant standing to one claiming to be the natural father of a child with a presumed father.’” Ex parte Presse, 554 So.2d at 413 (quoting Chief Justice Torbert’s dissenting opinion in Ex parte Anonymous, 472 So.2d 643, 644 (Ala.1985)) (emphasis omitted). The supreme court has further held that a man’s “interest in judicially establishing his alleged biological relationship to the ■ child is outweighed by the obvious objectives' Of the [former AUPA], which are to provide for the psychological stability and general welfare of the child and to afford legitimacy to children whenever. possible.” Ex parte C.A.P., 683 So.2d 1010, 1012 (Ala.1996).
In Ex parte T.J., supra, the' supreme court applied the AUPA principles “‘that seek to protect the sanctity of family relationships’” to the holding-out provision’of the current AUPA, 'i.e., § 26-17-204(a)(5). 89 So.3d at 748 (quoting Ex parte Presse, 554 So.2d at 412). The supreme court noted that both “the United States Supreme Court and [it] have held that biological ties are not as important as parent-child relationships that give young children emotional stability.”- Id. at 747. After examining its holding in Ex parte Presse, the supreme court concluded “that the legislature did not intend for biology to prevent a presumption of paternity under § 26-17-204(a)(5).” Id. at 748.
“‘[I]t is well established that “‘[t]he Legislature is endowed with the exclusive domain to formulate public policy in Alabama — ””” Cline v. Ashland, Inc., 970 So.2d 755, 757 (Ala.2007) (quoting Leonard v. Terminix Int’l Co., 854 So.2d 529, 534 (Ala.2002)). “The legislature is entrusted with making the public policy of this State, whether or not it is public policy of which this Court would approve.” Id. at 758 (citing Boles v. Parris, 952 So.2d 364, 367 (Ala.2006); and Marsh v. Green, 782 So.2d 223, 231 (Ala.2000)). We must uphold the validity of a statute against a challenge on substantive-due-process grounds as long as the statute has a rational basis’and-no fundamental rights are infringed. Gideon, 379 So.2d at 574. C.E.G. presents no arguments against the *958 rationality of the public policy behind the holding-out provision and the exclusion of individuals who are not a presumed father from maintaining an action to establish a child’s paternity under the AUPA when there is a presumed father present. Therefore, based on our limited standard of review and because the AUPA has a justifiable basis, C.E.G. has not established that § 26-17-204(a)(5) and § 26-17-607(a), as written, violate the guarantee of substantive due process, and we pretermit further discussion of this issue. See Thorn v. Jefferson Cnty., 375 So.2d 780, 787 (Ala.1979) (“[A] party attacking a statute has the burden of overcoming the presumption of constitutionality....”).
C.E.G. also argues that § 26-17-204(a)(5) and § 26-17-607(a), as applied specifically to him, are unconstitutional because, he asserts, T.E.’s presumed paternity pursuant to the holding-out provision is based on cohabitation between A.L.A. and T.E. that could end at any moment. The legislature has not provided in the AUPA that a man’s cohabitation with the mother is a requirement for presumed-paternity status, pursuant to the holding-out provision. It is undisputed that T.E. established a parental relationship with the child, together with A.L.A. The public-policy principles behind § 26-17-204 seek to protect the sanctity of such parental relationships over that of a party claiming only a biological connection with the child. Therefore, again, based on our limited standard of review, C.E.G. has not established that, as applied to him, § 26-17-204(a)(5) and § 26:-17-607(a) deprive him of his substantive-due-process rights. •
Next, we turn to C.E.G.’s claim that the AUPA deprives him of -his right to procedural due process by preventing him from ■ asserting his claim to paternity. The guarantee of procedural due process protects against a state’s impairment of a liberty interest without fair proceedings. See Daniels v. Williams, supra. C.E.G. contends that the AUPA fails to provide a procedure through which a man claiming to be a biological father of a child may pursue his liberty interest in developing a relationship with the child. We note that an individual is prevented from maintaining an action to establish the paternity of a child only if there is a presumed father. If such a procedure were provided, C.E.G. would be allowed to challenge T.E.’s presumed paternity. Therefore, the essential question raised by C.E.G.’s argument is whether a man claiming biological fatherhood of a child should be allowed to displace a presumed father. Unless that substantive legal question is answered to the affirmative, there is no need for a procedure to displace a presumed father.
In enacting § 26-17-204 and § 26-17-607(a), the legislature has determined as a matter of substantive law that a presumed father is the legal father of a child and that no one can displace him as long as he persists in that presumption. Ex parte Presse, 554 So.2d at 415; see P.G. v. G.H., 857 So.2d 823, 828 (Ala.Civ.App.2002) (holding that former AUPA section establishing presumptions of paternity provided for a substantive determination). Accordingly, the inquiry into the substantive legal sufficiency of those statutory provisions must be answered first. Because we are upholding the constitutionality of the holding-out provision against C.E.G.’s substantive-due-process challenge, a procedure to .displace a presumed father of his status is not needed, and we therefore must reject C.E.G.’s procedural-due-process argument. Michael H., 491 U.S. at 121 (holding that an inquiry into a conclusive presumption regarding paternity- does not call into question the adequacy of procedures); see Connecticut Dep’t of Pub. Safety v. Doe, *959 538 U.S. 1, 8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (holding that claims challenging a substantive rule of law are not properly-analyzed in terms of procedural due process); and Ex parte Presse, 554 So.2d at 415 (adopting reasoning in Michael H. that rejected a procedural-due-process challenge).
We note that a man’s status as a presumed father may be challenged. See, e.g., Ex parte T.J., 89 So.3d at 749 (instructing juvenile court to determine whether presumed-father status should be accorded to party). Because a man claiming only a biological relationship with a child has, according to legislatively established public policy, a subordinated liberty interest to that of a presumed father, the legislature has provided that the man seeking to establish paternity is limited to challenging the presumptive father’s status. Here, C.E.G. does not challenge the sufficiency of the proceedings establishing T.E.’s status as a presumed father.
C.E.G. further argues that, as applied, § 26-17-204(a)(5) and § 26-17-607(a) provided him with no means, independent of A.L.A.’s actions, to protect his opportunity to establish a relationship with the child and that A.L.A. had unilateral control over his ability to pursue his claim of parental rights to the child. As discussed, C.E.G. has not established that the application of § 26-17-204(a)(5) and § 26-17-607(a) are subject to a procedural-due-process challenge. Furthermore, we note that C.E.G. accepts the constitutionality of the provisions in § 26-17-204 providing for presumed paternity based on. marriage. If T.E.’s presumed paternity status was based on a marriage with A.L.A., C.E.G. would not have an independent means to establish paternity in that situation either. Also, C.E.G.’s inability to maintain an action to establish the paternity of the child is due to T.E.’s status as a presumed father, a status T.E. acquired by taking actions such as receiving the child into his home, holding out the child as his own, establishing a parental relationship with the child by providing financial and emotional support, and persisting in his presumed fatherhood. Because C.E.G.’s inability to maintain an action to establish the paternity of the child is due, at least in part; to T.E.’s actions, we conclude that § 26-17-204(a)(5) and § 26-17-607(a) did not allow the mother to unilaterally prevent C.E.G. from pursuing a paternity action.
Although C.E.G.’s initial brief on appeal purports to make an argument challenging the AUPA on equal-protection grounds, C.E.G. does not present a cognizable equal-protection analysis with supporting legal authority. We, therefore, decline to further consider that line of argument. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008) (“Rule 28(a)(10)[, Ala. R.App. P„] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”); and M.E.T. v. M.F., 892 So.2d 393, 394 (Ala.Civ.App.2003) (declining to develop for him biological father’s argument, based on equal-protection grounds, against former AUPA statute governing presumption of paternity).
C.E.G. additionally argues that the trial court’s decision in effect impermissibly treats T.E. as if he was allowed to adopt the child by estoppel. An “equitable adoption” or “adoption by estoppel” is a rare judicial recognition of a parent-child relationship for the purpose of avoiding an unfair result, typically from the application of intestacy statutes. C.H.H. v. R.H., 696 So.2d 1076, 1078 (Ala.Civ.App.1996). Such a judicial recognition is needed only when the parent-child relationship is not other *960 wise' legally recognized, such when there has been as an incomplete adherence to the statutory requirements for an adoption.' The trial court based its decision not to permit O.E.G. to proceed in his attempt to establish the paternity of the child on the ground that the AUPA does not permit him to do so. C.E.G. fails to establish how the concepts of adoption by estoppel or equitable adoption are applicable to the trial Court’s ruling or how such concepts would serve as a basis to reverse the trial court’s judgment. Because we uphold the trial court’s decision based on the constitutionality of the AUPA, we need not further consider this equitable-adoption argument.

Conclusion

C.E.G.’s arguments fail to show that the AUPA violates principles of due process or equal protection. For the reasons stated, we affirm the trial court’s judgment dismissing C.E.G.’s action.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.